REVISED 1/26/2022

# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

October 27, 2021

Lyle W. Cayce
Clerk

No. 20-60081

Gleidy Yessenia Jaco; Cristofer Alejandro Portillo Jaco,

*Petitioners*,

*versus*

Merrick Garland, *U.S. Attorney General*,

*Respondent*.

Petition for Review of an Order of the
Board of Immigration Appeals
BIA No. A208 982 107
BIA No. A208 982 108

Before Jolly, Elrod, and Oldham, *Circuit Judges*.

Jennifer Walker Elrod, *Circuit Judge*:

Appellant Gleidy Yessenia Jaco is an immigrant from Honduras seeking asylum, withholding of removal, and protection under the Convention Against Torture (CAT). Her child seeks derivative asylum. After both the Immigration Judge (IJ) and the Board of Immigration Appeals (BIA) denied her claims, Jaco filed a *pro se* petition for review from the BIA's

No. 20-60081

dismissal of her appeal and denial of her motion for reconsideration. We likewise deny her petition for review.

## I.

Jaco left Honduras fleeing her former partner. According to Jaco, her former partner abused her and raped her repeatedly. Jaco did not report the domestic violence to the police due to his threats to kill her for doing so. But she did seek and obtain child support and a restraining order in October of 2014. According to Jaco, her former partner violated the restraining order, at one point by coming too close to her house and at another by stopping her at the grocery store to ask why she took him to court.

In February of 2016, her former partner told her that he would kill her and her child if she did not return to him. Jaco did not do so and moved to another city. But when she returned for a day to her mother's house, he confronted her again. He told her that he knows where she lives and that he will kill her if she does not return.

Jaco decided to flee her former partner and Honduras. She and her child entered the United States in April of 2016. Although her former partner has not contacted her since she entered the United States, she has heard that he is upset with her leaving. Both her mother and a former neighbor reported that he is trying to figure out where she is and that he wants revenge. Since arriving in the United States, Jaco has a new partner from Mexico, with whom she has another child. As such, Jaco fears for the lives of her and her family if she is forced to return to Honduras.

## II.

Gleidy Jaco and her child entered the United States without valid entry documents. DHS charged her with inadmissibility to and removability from the United States under section 212(a)(7)(A)(i)(I) of the Immigration

No. 20-60081

and Nationality Act (INA). 8 U.S.C. § 1182(a)(7)(A)(i)(I).  In response, Jaco applied for asylum, withholding of removal, and for protection under CAT. Her child sought derivative asylum.

The IJ denied Jaco's claims for asylum, withholding of removal, and CAT protection.  With regard to CAT protection, the IJ determined that there was "insufficient evidence . . . indicating the government of Honduras would wish to torture or acquiesce in the torture of" Jaco.  And with regard to Jaco's claims for asylum and withholding of removal, the IJ found that Jaco's proposed social group—women in Honduras unable to leave their domestic relationships—was not cognizable.  Although one of the BIA's recent precedential opinions, *Matter of A-R-C-G-*, 26 I. & N. Dec. 388 (BIA 2014), had recognized the group "married women in domestic relationships who are unable to leave," the IJ distinguished Jaco's case.  Relying also on *Matter of M-E-V-G-*, 26 I. & N. Dec. 227 (BIA 2014), and *Matter of W-G-R-*, 26 I. & N. Dec. 208 (BIA 2014), the IJ considered a number of factors, including the fact that Jaco and her former partner were never married, and held that Jaco's case was sufficiently distinguishable from *A-R-C-G-*.

Jaco appealed to the BIA on September 5, 2018.  In addition to challenging the IJ's conclusions, she argued that the BIA should remand her case in light of the newly released *Matter of A-B-*, 27 I. & N. Dec. 316 (A.G. 2018) (*A-B-I*), in which the Attorney General vacated *A-R-C-G-* and held that "married women in Guatemala who are unable to leave their relationship" was not a particular social group.

The BIA dismissed the appeal.  Citing *A-B-I*, it held that "[g]enerally, claims by aliens pertaining to domestic violence perpetrated by non-governmental actors will not qualify for asylum."  The BIA further held that even if she were to qualify for a particular social group, Jaco failed to show

3

that the Honduran government is unwilling or unable to prevent her persecution, as required for claims of asylum and withholding of removal.

On April 29, 2019, Jaco filed a motion to reconsider. As is relevant here, Jaco argued that (1) the IJ misapplied *A-B-I* and failed to assess her particular social group claim on an individual basis; (2) the BIA should have remanded her case to the IJ to consider her inclusion in additional social groups such as "Honduran women," "Honduran women in domestic relationships," "Honduran women who oppose male domination," and "Honduran women viewed as property because of their position in a familial relationship;" and (3) the BIA erred in concluding that Jaco did not show that the Honduran government was unwilling or unable to prevent her persecution.

Jaco also filed a petition for review in this court. After she filed her petition, the government filed a motion asking this court to remand her case to the BIA to allow it to conduct a "detailed analysis" of the effect of *A-B-I* on Jaco's proposed group, allow it to address any other dispositive issue, or allow it to remand to the IJ to further explain whether the Honduran government was "unwilling or unable" to prevent Jaco's persecution. On September 12, 2019, this court granted the government's motion and remanded the case to the BIA.

On remand, the BIA denied Jaco's motion for reconsideration and again dismissed the appeal. The BIA refused to either consider in the first instance or remand for consideration of groups proposed by Jaco for the first time on appeal. It further found no factual or legal error in its prior determination that "women in Honduras unable to leave their domestic relationships" is not a cognizable particular social group. The BIA also affirmed the IJ's distinction of Jaco's case from *A-R-C-G-* on numerous grounds: (1) Jaco was not married to her former partner; (2) the relationship

No. 20-60081

was not long lasting; (3) the abuse was not as extensive as in *A-R-C-G-*; (4) she moved out of her former partner's home; and (5) she took her former partner to court and received child support and a protective order.

The BIA also recognized that the Attorney General's decision in *A-B-I* overruled *A-R-C-G-*. Citing *A-B-I*, it reiterated that claims involving domestic violence will generally not qualify for asylum unless the violence was inflicted "on account of" a protected ground. And that protected ground, in turn, "must exist independently" of the harm from which the asylum seeker flees. The BIA concluded that Jaco's group failed this requirement because it was defined by the very persecution from which she flees. Quoting *A-B-I*, it determined that the group was "effectively defined to consist of women . . . who are victims of domestic abuse because the inability 'to leave' [is] created by harm or threatened harm." *See* 27 I. & N. Dec. at 334–35 (alteration in original). Finally, the BIA held that the proposed group was neither particularized nor recognized in society as a distinct group. Because Jaco had failed to show a cognizable particular social group, the BIA found it unnecessary to address whether the Honduran government was unwilling or unable to protect her. After affirming its prior decision that CAT relief is unavailable, the BIA denied the motion for reconsideration and dismissed the appeal.

### III.

Jaco now petitions from the BIA's decision dismissing her appeal and denying her timely motion for reconsideration. Our jurisdiction is governed by 8 U.S.C. § 1252. Normally, petitioners wishing to challenge both the dismissal of an appeal and the denial of a motion for reconsideration must file separate petitions. *See Kane v. Holder*, 581 F.3d 231, 237 n.14 (5th Cir. 2009); 8 U.S.C. § 1252(b)(6). Here, however, because of our prior remand to the BIA, the Board addressed both Jaco's appeal and her motion to reconsider in

No. 20-60081

the same order. Thus, Jaco's single petition for review can challenge both of the BIA's decisions. *See* 8 U.S.C. § 1252(b)(1); *see also id.* § 1252(a)(1); *Stone v. I.N.S.*, 514 U.S. 386, 405–06 (1995).

Although Jaco was represented by counsel at all prior stages of these proceedings, she files this petition for review *pro se*. We construe the filings of *pro se* litigants liberally. *Coleman v. United States*, 912 F.3d 824, 828 (5th Cir. 2019). Construed accordingly, Jaco's petition makes two arguments. First, that the BIA erred in failing to either consider or remand for consideration of additional proposed "particular social groups" that Jaco raised for the first time on appeal. And second, that the BIA erred in concluding that Jaco's proposed group—Honduran women who are unable to leave their domestic relationships—is not a "particular social group" within the meaning of 8 U.S.C. § 1101(a)(42)(A) (claims for asylum) and 8 U.S.C. § 1231(b)(3)(A) (claims for withholding of removal).[1]

## IV.

"When considering a petition for review, this court has the authority to review only the BIA's decision, not the IJ's decision, unless the IJ's decision has some impact on the BIA's decision." *Wang v. Holder*, 569 F.3d 531, 536 (5th Cir. 2009) (citing *Mikhael v. I.N.S.*, 115 F.3d 299, 302 (5th Cir. 1997)).[2]

---

[1] Although we liberally construe *pro se* petitions, *pro se* litigants must still comply with the civil rules of appellate procedure. *United States v. Wilkes*, 20 F.3d 651, 653 (5th Cir. 1994). Jaco does not brief any claim about CAT relief and therefore forfeits that issue. *See* Fed. R. App. P. 28(a)(8); *Chambers v. Mukasey*, 520 F.3d 445, 448 n.1 (5th Cir. 2008) (holding that issues not briefed are forfeited on appeal).

[2] Jaco also argues on appeal that the Honduran government is "unwilling or unable to prevent" her persecution. In its first decision dismissing Jaco's appeal, the BIA held that Jaco failed to make this showing. However, the BIA did not address the issue on remand, finding it unnecessary to address because Jaco failed to show a nexus "between

No. 20-60081

We review the denial of a motion to reconsider under an abuse-of-discretion standard. *Gonzales-Veliz v. Barr*, 938 F.3d 219, 226 (5th Cir. 2019). Under this standard, Jaco must identify either a "change in the law, a misapplication of the law, or an aspect of the case that the BIA overlooked." *Id.* (quoting *Zhao v. Gonzales*, 404 F.3d 295, 304 (5th Cir. 2005)). The BIA's decision will stand unless it was "capricious, racially invidious, utterly without foundation in the evidence or otherwise so irrational that it is arbitrary rather than the result of any perceptible rational approach." *Zhao*, 404 F.3d at 304 (quoting *Pritchett v. I.N.S.*, 993 F.2d 80, 83 (5th Cir. 1993)).

We review questions of law *de novo*. However, we accord *Chevron* deference to the BIA's interpretations of ambiguous statutory provisions within its purview. *E.g.*, *Lowe v. Sessions*, 872 F.3d 713, 715 (5th Cir. 2017). Finally, we review the BIA's findings of fact under a "substantial evidence" standard and "may not reverse the BIA's factual findings unless the evidence compels it." *Gonzales-Veliz*, 938 F.3d at 224 (quoting *Wang*, 569 F.3d at 536–37).

## V.

We turn first to Jaco's claim that the BIA erred in not considering or remanding to the IJ for consideration of Jaco's membership in proposed particular social groups that she did not raise before the IJ.

To succeed on an application for asylum, an applicant must show that she is "unable . . . or unwilling to return to . . . [and] avail [herself] of . . . the protection of [her home] country because of persecution or a well-founded

---

the harm suffered by [Jaco] and a ground protected by the Act." This petition is an appeal from the BIA's decision on remand. Because it did not address this issue on remand, we are not required to reach it here. However, we do address the futility of this argument in Part VI.B, *infra*.

fear of persecution on account of race, nationality, membership in a particular social group, or political opinion." *Ghotra v. Whitaker*, 912 F.3d 284, 288 (5th Cir. 2019) (first alteration in original) (quoting 8 U.S.C. § 1101(a)(42)(A)). In contrast, an applicant for withholding of removal must show that this persecution is "more likely than not." *Efe v. Ashcroft*, 293 F.3d 899, 906 (5th Cir. 2002) (quoting 8 C.F.R. § 208.16(b)(1)); *see also* 8 U.S.C. § 1231(b)(3)(A).

Jaco argues that she qualifies for membership in a "particular social group." Before the IJ, Jaco claimed membership in only one particular social group: Honduran women unable to leave their domestic relationships. Yet in her motion for reconsideration, she claimed membership in additional groups not raised before the IJ, including: (1) Honduran women who oppose male domination, and (2) Honduran women viewed as property because of their position in a familial relationship. According to Jaco, the BIA should have either considered these groups in the first instance or remanded for the IJ to do so.

The BIA did not err in declining to do either. As the BIA notes, it has discretion to entertain novel particular social group claims but does not commit reversible error by declining to do so. In *Cantarero-Lagos v. Barr*, we rejected an applicant's claim that the BIA was obligated to entertain a claimed particular social group in the first instance. 924 F.3d 145, 150–51 (5th Cir. 2019). In doing so, we noted that "although the cognizability of a PSG presents a legal question, its answer indisputably turns on findings of fact." *Id.* at 150. These findings of fact are best left to the IJ. For this reason, we concluded that the BIA did not reversibly err by refusing to entertain new social groups first raised on appeal. *Id.* at 150–51.

This approach squares with the BIA's own decisions addressing this issue. In *Matter of W-Y-C- & H-O-B-*, the BIA similarly declined to address

a novel social group raised before it in the first instance. 27 I. & N. Dec. 189, 191–93 (BIA 2018).  The BIA stressed the "inherent factual nature" of the social group determination: "A determination whether a social group is cognizable is a fact-based inquiry made on a case-by-case basis, depending on whether the group is immutable and is recognized as particular and socially distinct in the relevant society." *Id.* at 191 (quoting *Matter of L-E-A-*, 27 I. & N. Dec. 40, 42 (BIA 2017)).  When a particular social group is asserted for the first time on appeal, "the [IJ] will not have had an opportunity to make relevant factual findings, which we cannot do in the first instance on appeal." *Id.*  After declining to consider the novel particular social group, the BIA further declined to remand the question to the IJ, citing limited resources and an overburdened docket. *Id.* at 191–92.

The same holds true here.  The record reflects that Jaco's counsel made a strategic decision not to proffer additional particular social group claims before the IJ.  Because whether to address the novel social group claims was squarely within the BIA's discretion, it did not abuse its discretion in declining to do so.

## VI.

Jaco next argues that the BIA incorrectly assessed her particular social group claim.  She claims that the BIA erred in holding that her particular social group—Honduran women who are unable to leave their domestic relationships—was not legally cognizable.  We hold that the BIA did not err.

As discussed above, in the absence of persecution based on race, nationality, or political opinion, an applicant for asylum or withholding of removal must make three showings.  First, that she belongs to a cognizable particular social group.  Second, a nexus between the persecution and her membership in the particular social group.  And third, that the government is either unwilling or unable to protect her from the persecution. *See*

No. 20-60081

*Gonzales-Veliz*, 938 F.3d at 228–29; *Vazquez-Guerra v. Garland*, 7 F.4th 265, 269 (5th Cir. 2021); 8 U.S.C. § 1101(a)(42)(A); *id.* § 1231(b)(3)(A).

While membership in a particular social group need not be the sole reason for the applicant's persecution, it must be "at least one central reason for persecuting [her]." *Sharma v. Holder*, 729 F.3d 407, 411 (5th Cir. 2013) (quoting 8 U.S.C. § 1158(b)(1)(B)(i)). It may not be "incidental, tangential, or subordinate to another reason for harm." *Shaikh v. Holder*, 588 F.3d 861, 864 (5th Cir. 2009) (quoting *Matter of J-B-N & S-M-*, 24 I. & N. Dec. 208, 214 (BIA 2007)).

The question whether "Honduran women who are unable to leave their domestic relationships" is a valid particular social group does not arise in a vacuum. We addressed this very question only two years ago. In *Gonzales-Veliz*, we surveyed immigration law as it existed at the time of the decision and held that the group is not cognizable. 938 F.3d at 232. Since that time, however, the Attorney General has vacated two significant BIA decisions, *A-B-I* and *A-B-II*,[3] and revived the previously overruled case of *A-R-C-G-*. *Matter of A-B-*, 28 I. & N. Dec. 307, 307 (A.G. 2021) (*A-B-III*) ("[*A-B-I* and *A-B-II*] are vacated in their entirety. . . . Immigration judges and the Board should . . . follow pre-*A-B-I* precedent, including [*A-R-C-G-*].").
For this reason, we will revisit our decision in *Gonzales-Veliz* in the light of *A-B-III*. Despite this, but consistent with our duty in *Chevron*, we will deny the petition for review. *Gonzales-Veliz* remains the law of this circuit.

## A.

We will start, as we did in *Gonzales-Veliz*, with the state of immigration law. In *Matter of M-E-V-G-*, the BIA synthesized prior BIA

---

[3] The Attorney General issued *A-B-II* to clarify questions arising from *A-B-I*. *Matter of A-B-*, 28 I. & N. Dec. 199 (A.G. 2021) (*A-B-II*).

decisions addressing the definition of "particular social group." 26 I. & N. Dec. 227, 228 (BIA 2014). In doing so, it clarified that an applicant must show that the group is (1) composed of members who share a common immutable characteristic, (2) defined with particularity, and (3) socially distinct within the society in question. *Id.* at 237. Furthermore, there must be a nexus between the particular social group and its persecution; the persecution must be "on account of" membership in the group. *Id.* at 242; 8 U.S.C. § 1101(a)(42).

In clarifying these requirements, the BIA carefully distinguished between the existence of a social group and the nexus between that social group and its persecution. As to the existence of a social group, drawing on the language of the statute, prior BIA decisions, and federal circuit court decisions, the BIA stated that the "social group must exist independently of the fact of persecution," and that "this criterion is well established in our prior precedents and is already a part of the social group analysis." *M-E-V-G-*, 26 I. & N. Dec. at 236 n.11 (citing *Matter of A-M-E- & J-G-U-*, 24 I. & N. Dec. 69, 74 (BIA 2007) and *Lukwago v. Ashcroft*, 329 F.3d 157, 172 (3d Cir. 2003)); *see also id.* at 242 (referencing the text and structure of 8 U.S.C. § 1101(a)(42)).

This does not mean that past persecution is irrelevant. Rather, it means that the group must be sufficiently defined and particularized by characteristics other than persecution. *See W-G-R-*, 26 I. & N. Dec. at 216 ("Circuit courts have long recognized that a social group must have 'defined boundaries' or a 'limiting characteristic,' other than the risk of being persecuted, in order to be recognized."). To illustrate, the BIA considered a hypothetical group of former employees of a country's attorney general. *M-E-V-G-*, 26 I. & N. Dec. at 242–43. The employees' shared experience of working for the attorney general satisfied the requirement of an immutable characteristic. And the group would also be sufficiently particularized. But

the group, without more, may not be considered sufficiently distinct in its society. In this case, government persecution may "cataly[ze] the society to distinguish the former employees in a meaningful way and consider them a distinct group." *Id.* at 243. But "the immutable characteristic of their shared past experience exists independent of the persecution." *Id.*

In a decision released on the same day as *M-E-V-G-*, the BIA elaborated on the nexus requirement. *W-G-R-*, 26 I. & N. Dec. 208 (BIA 2014). In *W-G-R-*, the BIA stated that "membership in a particular social group [must be] a central reason for [the] persecution." *Id.* at 224. This common-sense definition highlights the importance of the distinction between the existence of a group and the persecution that it suffers. In the BIA's words: "The structure of the Act supports preserving this distinction, which should not be blurred by defining a social group based solely on the perception of the persecutor." *Id.* at 218. To define a social group by its persecution collapses the "particular social group" and "persecution on account of membership" inquiries into the same question, contrary to the structure of the INA. *See* 8 U.S.C. § 1101(a)(42).

Nevertheless, later in the same year the BIA decided *A-R-C-G-*. 26 I. & N. Dec. 388 (BIA 2014). In *A-R-C-G-*, the petitioner claimed that "married women in Guatemala who are unable to leave their relationship" constituted a particular social group. *Id.* at 388–89. Whereas the IJ determined that the woman's husband did not abuse her "on account of" her membership in this group, the BIA reversed on appeal. Professing to apply *M-E-V-G-*, it determined that the "immutable characteristics" of "gender," "marital status," and "the inability to leave the relationship" combined "to create a group with discrete and definable boundaries." *A-R-C-G-*, 26 I. & N. Dec. at 393.

No. 20-60081

In 2018, however, the Attorney General overruled *A-R-C-G-* in *A-B-I*. 27 I. & N. Dec. at 316. After the BIA recognized the group "El Salvadoran women who are unable to leave their domestic relationships where they have children in common [with their partners]," the Attorney General directed the BIA to refer the decision for his review. *Id.* at 316–17, 321; *see also* 8 C.F.R. § 1003.1(h)(1)(i). Upon review, the Attorney General reversed. He reiterated that "[t]o be cognizable, a particular social group *must* 'exist independently' of the harm asserted in an application for asylum or statutory withholding of removal." *Id.* at 334 (citing *M-E-V-G-*, 26 I. & N. Dec. at 236 n.11, 243; *W-G-R-*, 26 I. & N. Dec. at 215; and a collection of federal circuit court cases). He reasoned that "[i]f a group is defined by the persecution of its members, then the definition of the group moots the need to establish actual persecution." *Id.* at 335. For this reason, he concluded that "[g]enerally, claims by aliens pertaining to domestic violence or gang violence perpetrated by non-governmental actors will not qualify for asylum." *Id.* at 320.

*A-B-I*, however, was itself overruled by the Attorney General in 2021. On February 2, 2021, the President issued an executive order directing the Attorney General and the Secretary of Homeland Security to address the definition of "a particular social group." Exec. Order No. 14010, § 4(c)(ii), 86 Fed. Reg. 8267, 8271 (Feb. 2, 2021). Because *A-B-I* and *A-B-II* addressed that definition, the Attorney General vacated both decisions in anticipation of further rulemaking. He also instructed immigration judges and the BIA to follow "pre-*A-B-I* precedent, including *A-R-C-G-*." *A-B-III*, 28 I. & N. Dec. at 307.

B.

Swept up in this flurry of overrulings is our decision in *Gonzales-Veliz*. In that case, we faced the question whether the group "Honduran women

13

unable to leave their relationship"—defined identically to Jaco's proposed social group—qualified as a particular social group. 938 F.3d at 223.  Issued after *A-B-I* but before *A-B-III*, we relied in part on *A-B-I* in concluding that the group was not cognizable.  Thus, keeping in mind our duty to exercise *Chevron* deference, we must determine whether the overruling of *A-B-I* gives us reason to depart from our decision in *Gonzales-Veliz*.  We hold that it does not.

In holding that the group in *Gonzales-Veliz* was not cognizable, we relied in part on *A-B-I*.  Yet we relied on *A-B-I* not out of deference to it but based on the quality of its reasoning. Indeed, our decision hinged on the inherent circularity involved in defining a particular social group by reference to the very persecution from which it flees.  We held that the group was "impermissibly defined in a circular manner. The group is defined by, and does not exist independently of, the harm—*i.e.*, the inability to leave." *Id.* at 232.  For this reason, we concluded that such an interpretation would "render the asylum statute unrecognizable." *Id.* at 235.

In contrast, we recognized that the Attorney General's "interpretation of the INA in [*A-B-I*] is . . . a much more faithful interpretation" of the statute. *Id.*  This interpretation was, we said, "a return to the statutory text as Congress created it and as it had existed before the BIA's *A-R-C-G-* decision." *Id.*  That our conclusion had support in the overwhelming weight of BIA precedents shows only that our reading of the statute was correct, not that *A-B-I* or any other decision was necessary for our conclusion.

Nor does *Chevron* deference affect our conclusion here.  Although we review the BIA's legal conclusions *de novo*, we grant *Chevron* deference to the BIA's precedential decisions interpreting statutes that it administers. *E.g.*, *Rodriguez-Avalos v. Holder*, 788 F.3d 444, 449 (5th Cir. 2015). *Chevron* entails

No. 20-60081

a two-step process for determining whether deference is appropriate. First, the relevant statutory provision must be ambiguous. And second, the agency's interpretation must be reasonable. *E.g.*, *Dhuka v. Holder*, 716 F.3d 149, 154 (5th Cir. 2013). Here, even assuming *arguendo* that the phrase "particular social group" is ambiguous and that *A-R-C-G-* requires upholding the cognizability of Jaco's group, that interpretation would be unreasonable for the reasons we gave in *Gonzales-Veliz*. Relying on circular reasoning is a logical fallacy. An interpretation that renders circular a statute's reasoning is unreasonable and therefore unworthy of deference under *Chevron*.[4]

---

[4] Our circuit has consistently refused to recognize particular social groups defined primarily by the persecution they suffer. This is true before and after both *A-R-C-G-* and *Gonzales-Veliz*. *E.g.*, *Orellana-Monson v. Holder*, 685 F.3d 511, 518–19 (5th Cir. 2012); *De Leon-Saj v. Holder*, 583 F. App'x 429, 430–31 (5th Cir. 2014) (per curiam); *Suate-Orellana v. Barr*, 979 F.3d 1056, 1061 (5th Cir. 2020); *Gomez-De Saravia v. Barr*, 793 F. App'x 338, 339–40 (5th Cir. 2020) (per curiam); *Serrano-de Portillo v. Barr*, 792 F. App'x 341, 342 (5th Cir. 2020) (per curiam); *Hercules v. Garland*, 855 F. App'x 940, 942 (5th Cir. 2021) (per curiam); *Argueta-Luna v. Garland*, 847 F. App'x 260, 261 (5th Cir. 2021) (per curiam).

This is true even after *A-B-III*. *See Castillo-Martinez v. Garland*, No. 20-60276, 2021 WL 4186411, at *2 (5th Cir. Sept. 14, 2021) (per curiam); *Santos-Palacios v. Garland*, No. 20-60123, 2021 WL 3501985, at *1–2 (5th Cir. Aug. 9, 2021); *Temaj-Augustin v. Garland*, 854 F. App'x 631, 632 (5th Cir. 2021) (per curiam).

Some, but not all, of our sister circuits have agreed with this anti-circularity principle. *Sanchez-Lopez v. Garland*, No. 18-72221, 2021 WL 3912145, at *1 (9th Cir. Sept. 1, 2021); *Del Carmen Amaya-De Sicaran v. Barr*, 979 F.3d 210, 217–18 (4th Cir. 2020); *Amezcua-Preciado v. United States Attorney General*, 943 F.3d 1337, 1345–46 & n.3 (11th Cir. 2019) (per curiam); *but see Juan Antonio v. Barr*, 959 F.3d 778, 789 n.2, 791–92 (6th Cir. 2020) (observing that "married indigenous women in Guatemala who are unable to leave their relationship" constitutes a cognizable particular social group); *Corea v. Garland*, No. 19-3537/20-3252, 2021 WL 2774260, at *3–4 (6th Cir. July 2, 2021) (remanding to the BIA to consider whether "Honduran women unable to leave their relationships" is a cognizable social group in light of *A-B-III*).

In the alternative, we hold that even if *Gonzales-Veliz* were not good law, Jaco's petition would still be denied.[5] Following pre-*A-B-I* precedent, as *A-B-III* instructs, would not change the result. In *A-B-III*, the Attorney General instructed immigration judges and the BIA to follow "pre-*A-B-I* precedent, including [*A-R-C-G-*]." *A-B-III*, 28 I. & N. Dec. at 307. This was also the relevant law at the time of the IJ's decision, and the IJ correctly distinguished Jaco's case from that upheld in *A-R-C-G-*. Because *A-R-C-G-* is not clearly on point and did not overrule prior case law, we must read it in light of prior BIA decisions, including *M-E-V-G-*. *Cf. Gonzales-Veliz*, 938 F.3d at 235 ("[*A-B-I*] did not alter [prior immigration law]; it simply restated established legal principles and overruled *A-R-C-G-* because *A-R-C-G-* deviated from those principles.").

Indeed, multiple factors counsel toward reading *A-R-C-G-* narrowly, including (1) the fact that DHS had conceded the existence of a particular social group, and (2) *A-R-C-G-*'s own statement that "where concessions are not made and accepted as binding, these issues will be decided based on the particular facts and evidence on a case-by-case basis as addressed by the Immigration Judge in the first instance." 26 I. & N. Dec. at 392–93, 395. For these reasons, Jaco's group would not be recognized even if *Gonzales-Veliz* were not the law of this circuit.

We also reject Jaco's argument that intervening BIA decisions since the time of the IJ's decision require a remand of her case. *A-R-C-G-* was the relevant law at the time of the IJ's decision. Now that *A-R-C-G-* has been revived, a remand would place Jaco back where she started. And her claims have already been correctly rejected under that standard. Alternatively,

---

[5] Alternative holdings are not dicta and are binding in this circuit. *Texas v. United States*, 809 F.3d 134, 178 n.158 (5th Cir. 2015).

regardless of the controlling decision, only an unreasonable interpretation of the INA can support her proposed group.

A remand is also inappropriate because it would be futile. *See, e.g.*, *Nguhlefeh Njilefac v. Garland*, 992 F.3d 362, 365 (5th Cir. 2021) ("[E]ven if the Board erred at some point in its analysis, we can still uphold its ultimate decision if 'there is no realistic possibility' that the Board's conclusion would have been different absent the error." (quoting *Enriquez-Gutierrez v. Holder*, 612 F.3d 400, 407 (5th Cir. 2010))); *United States v. Alvarez*, 210 F.3d 309, 310 (5th Cir. 2000) (per curiam) (declining to remand where a remand would be futile); *see also Villegas v. Stephens*, 631 F. App'x 213, 214 (5th Cir. 2015) (per curiam) (same).  Applicants for asylum or withholding of removal must show that the government "is unable or unwilling to control" the applicant's persecution. *See Tesfamichael v. Gonzales*, 469 F.3d 109, 113 (5th Cir. 2006) (citing 8 C.F.R. § 1208.13(b)(1)).  As the BIA held in its first decision, Jaco failed to make this showing.  Jaco received child support and a restraining order from the Honduran government against her former partner.  While her former partner appeared to violate the restraining order on at least two occasions, Jaco reported only one occasion to the judge, and never informed the police.  Rather than being unable or unwilling to protect her, the record reflects that the government was responsive to her fears when apprised of them. Therefore, even if Jaco could show membership in a cognizable particular social group, a remand would be futile because it would not change the disposition of her case.[6]

In holding that Jaco's proposed group is not cognizable, we do not hold that women who have suffered from domestic violence are categorically precluded from membership in a particular social group.  We hold only that

---

[6] *See supra* note 5.

a particular social group's immutable characteristics must make the group sufficiently particularized and socially distinct without reference to the very persecution from which its members flee. *E.g.*, *Perez-Rabanales v. Sessions*, 881 F.3d 61, 67 (1st Cir. 2018) ("A sufficiently distinct social group must exist independent of the persecution claimed to have been suffered by the alien and must have existed before the alleged persecution began."); *Rreshpja v. Gonzales*, 420 F.3d 551, 556 (6th Cir. 2005) ("The individuals in the group must share a narrowing characteristic other than their risk of being persecuted.").

Accordingly, even if Jaco's group meets the immutable characteristic and nexus requirements, we still hold that her group is neither particularized nor socially distinct.[7]  In *Gonzales-Veliz*, we determined that—even as defined by the persecution that it suffers—the group "Honduran women unable to leave their relationships" lacked the requisite particularity and social distinction. 938 F.3d at 232; *see also Suate-Orellana v. Barr*, 979 F.3d 1056, 1061 (5th Cir. 2020); *Orellana-Monson v. Holder*, 685 F.3d 511, 521–22 (5th Cir. 2012).  The same is true here.  Substantial evidence supports the BIA's conclusion that her group is neither particularized nor distinct.  And without the illicit element of persecution, the group "Honduran women" is even less particularized. Jaco's proposed group fails this test.

\*    \*    \*

We DENY Jaco's petition for review.  The BIA did not abuse its discretion in concluding that Jaco's particular social group was not cognizable, and substantial evidence supported its conclusion.

---

[7] *See supra* note 5.