# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**
March 7, 2022

Lyle W. Cayce
Clerk

No. 20-61077
Summary Calendar

Juana Oralia Hernandez Ochoa,

*Petitioner*,

*versus*

Merrick Garland, U.S. Attorney General,

*Respondent*.

Petition for Review of an Order of the
Board of Immigration Appeals
BIA No. A216 074 540

Before Southwick, Oldham, and Wilson, *Circuit Judges*.

Per Curiam:*

Juana Oralia Hernandez Ochoa, a native and citizen of Guatemala, entered the United States without inspection. She petitions for review of the Board of Immigration Appeals decision affirming the Immigration Judge's denial of her claims for withholding of removal, protection under the

---

* Pursuant to 5th Circuit Rule 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5th Circuit Rule 47.5.4.

Convention Against Torture, and voluntary departure. The petition is
DENIED.

## FACTUAL AND PROCEDURAL BACKGROUND

In February 2010, Juana Oralia Hernandez Ochoa entered the United
States without inspection. On September 8, 2017, the Department of
Homeland Security served her with a Notice to Appear and charged her as
removable. Hernandez Ochoa admitted to the allegations in the Notice and
conceded removability. She applied for withholding of removal, protection
under the Convention Against Torture (CAT), and voluntary departure.

On October 4, 2018, the Immigration Judge (IJ) held a hearing on her
application for relief. Hernandez Ochoa testified to explain that she fears
returning to Guatemala because she believes she will be harmed by her ex-
husband and brother. Her fear is based on previous experiences of abuse at
the hands of her ex-husband and sexual assault by her cousin, brother, and
brother-in-law.

Hernandez Ochoa's ex-husband began abusing her after she became
pregnant with their first daughter. She testified he hit her every 15 days,
sometimes to the point that she required medical treatment. Once he
threatened her with a firearm, and on another occasion, he attempted to
drown her. She never reported the abuse to the Guatemalan police. She was
able to leave him in March 2003 when she left Guatemala for the United
States.

Hernandez Ochoa also testified that some of her family members
sexually assaulted and harmed her. She explained that at a young age she was
raped at different times by her brother and cousin, and her brother-in-law
attempted to do the same. She also testified that in 2008, when she briefly
returned to Guatemala, the same brother trapped her in a house and
demanded money. She was only able to escape when she promised him that

she would give him money the next day. She did not report any of these incidents to the police. Her father initiated a complaint related to the brother-in-law's attempted rape, but the complaint was not pursued because her brother-in-law's brother was the mayor.

The IJ found Hernandez Ochoa credible overall, but denied her claims for withholding of removal, CAT protection, and voluntary departure, ordering her to be removed to Guatemala. Hernandez Ochoa appealed to the Board of Immigration Appeals (BIA). The BIA affirmed the IJ's decision without an opinion. Hernandez Ochoa then petitioned this court for review of the BIA's decision.

## DISCUSSION

Where the BIA affirms an IJ's decision without opinion, we review the IJ's opinion as final agency action. *Majd v. Gonzales*, 446 F.3d 590, 594 (5th Cir. 2006). We review questions of law *de novo* and factual findings for substantial evidence. *Mireles-Valdez v. Ashcroft*, 349 F.3d 213, 215 (5th Cir. 2003).

Hernandez Ochoa argues the BIA erred in adopting the IJ's decision that she was not eligible for withholding of removal. "To be eligible for withholding of removal, an applicant must demonstrate a 'clear probability' of persecution upon return" to their home country. *Roy v. Ashcroft*, 389 F.3d 132, 138 (5th Cir. 2004) (quoting *Faddoul v. INS*, 37 F.3d 185, 188 (5th Cir. 1994)). This means the applicant must show that "it is more likely than not that the applicant's life or freedom would be threatened by persecution on account of either his race, religion, nationality, membership in a particular social group, or political opinion." *Id.* To make this showing, the applicant must demonstrate that she suffered from past persecution or that she has a well-founded fear of future persecution on account of one of those five protected categories. *Id.*

No. 20-61077

Hernandez Ochoa argues she fears returning to Guatemala because she was persecuted based on her membership in a particular social group. She identifies two social groups on appeal: "Guatemalan women in a domestic relationship who are unable to leave" and "Guatemalan female survivors of sexual victimization." The IJ determined neither of these groups could be considered a "particular social group" that would qualify her for withholding of removal.

"A particular social group" is one that "is (1) composed of members who share a common immutable characteristic, (2) defined with particularity, and (3) socially distinct within the society in question." *Jaco v. Garland*, 24 F.4th 395, 403 (5th Cir. 2021). A social group must "exist independently of the persecution." *Id.* at 403 (quoting *In re M-E-V-G*, 26 I. & N. Dec. 227, 236 n.11 (BIA 2014)). This requirement "means that the group must be sufficiently defined and particularized by characteristics other than persecution." *Jaco*, 24 F.4th at 403.

For example, we have held that "Honduran women unable to leave their relationship" is not a cognizable social group. *Gonzales-Veliz v. Barr*, 938 F.3d 219, 232 (5th Cir. 2019). The group is defined in a circular manner in that the harm — inability to leave — is the defining characteristic of the group. *Id.* The group therefore does not exist independently of the persecution the applicant seeks to avoid. *Id.* In a case that addressed a proposed social group of "Honduran women unable to leave their domestic relationships," we explained, in addition to showing circularity, the group was not particular or distinct enough to be considered a "particular social group" if defined without reference to the persecution. *Jaco*, 24 F.4th at 402, 407.

Both groups that Hernandez Ochoa identifies suffer from the same problem. First, "Guatemalan women in a domestic relationship who are

4

unable to leave" is nearly identical to the group at issue in *Gonzales-Veliz* and *Jaco*. Like the social group in those cases, "Guatemalan women in a domestic relationship who are unable to leave" is circularly defined by the harm that the group seeks to avoid — inability to leave. Further, even when defined without reference to the persecution, the group lacks particularity and distinctness because it applies to many members of society. *Gonzales-Veliz*, 938 F.3d at 232. Although Hernandez Ochoa narrows the proposed group to "Guatemalan women in domestic relationships," this limitation is so slight that it does not change the group's similar application to a potentially large group of society. Accordingly, this group cannot be considered a "particular social group" to establish Hernandez Ochoa's eligibility for withholding of removal.

Hernandez Ochoa's second claimed group — "Guatemalan female survivors of sexual victimization" — is also defined by the harm that the group members seek to avoid, in this instance further sexual victimization. Specifically, this group does not exist independently of the persecution alleged. Indeed, in Hernandez Ochoa's case, she argues she fears harm from her brother who is one of the actors that created her membership in this group in the first place. The group also is not cognizable if defined without reference to the persecution. In this case the group ends up comprised of the broad category "Guatemalan females," which like the group at issue in *Gonzales-Veliz* and *Jaco*, is neither particular nor distinct. *See Jaco*, 24 F.4th at 403. This group also cannot be considered a cognizable social group. The BIA therefore did not err in affirming the IJ's decision that Hernandez Ochoa is not eligible for withholding of removal. *See Orellana-Monson v. Holder*, 685 F.3d 511, 522 (5th Cir. 2012).

Next, Hernandez Ochoa also applied for protection under CAT. To state a CAT claim, the applicant must prove that "it is more likely than not that [the applicant] would be tortured if removed to the proposed country of

removal." 8 C.F.R. § 208.16(c)(2). Torture is defined as "any act by which severe pain or suffering, whether physical or mental, is intentionally inflicted on a person . . . by or at the instigation of or with the consent or acquiescence of a public official . . . or other person acting in an official capacity." 8 C.F.R. § 208.18(a)(1). When an applicant alleges torture by a nongovernmental actor, the applicant can show consent or acquiescence by a public official either by showing a public official's "awareness of such activity" and "breach[ of] his or her legal responsibility to intervene to prevent such activity" or "willful blindness of torturous activity." *Iruegas-Valdez v. Yates*, 846 F.3d 806, 812 (5th Cir. 2017) (quotation marks and citation omitted).

Hernandez Ochoa claims torture that involved nongovernmental actors, but she has not stated that the government was aware of any harm she endured or that any public official was involved in that harm. At most, she says her father initiated a complaint regarding the sexual assault related to her brother-in-law. This is not sufficient, though, because she testified that the complaint was not pursued to the extent that the government could be considered aware of the harm that occurred. Moreover, she initiated this complaint between 10 to 20 years ago, which makes it unlikely that the government is currently aware of her harm should she return. We therefore cannot say the government acquiesced as required for a CAT claim. *See Martinez-Lopez v. Barr*, 943 F.3d 766, 772 (5th Cir. 2019) ("[A]n official must be aware of the torture and take no action to protect the victim.").

Hernandez Ochoa attempts to overcome the government's lack of awareness of her circumstances by arguing that the government is willfully blind to her harm because it is well documented that the state of Guatemala cannot protect women from gender-based harm. This is not enough to show it is more likely than not that she will be tortured upon return to her home country. "Generalized country evidence tells us little about the likelihood state actors will torture any particular person"; such evidence therefore

cannot establish Hernandez Ochoa's CAT claim. *Qorane v. Barr*, 919 F.3d 904, 911 (5th Cir. 2019). The BIA did not err in affirming the IJ's conclusion that Hernandez Ochoa was not eligible for protection under CAT.

Finally, Hernandez Ochoa asks us to review the BIA's decision affirming the IJ's denial of voluntary departure. "Voluntary departure is a discretionary form of relief that allows certain aliens to leave the country willingly." *Kohwarien v. Holder*, 635 F.3d 174, 176 n.1 (5th Cir. 2011). The immigration judge may grant voluntary departure and allow the applicant to leave the United States at her own expense if he or she finds the applicant is statutorily eligible. 8 U.S.C. § 1229c(b)(1).

The IJ denied Hernandez Ochoa's request for voluntary departure, finding she was statutorily eligible but did not deserve voluntary departure because she violated United States immigration laws and unlawfully returned to the United States. We do not have jurisdiction to review a denial of a request for an order of voluntary departure. 8 U.S.C. § 1229c(b)(1)(f); *Eyoum v. INS*, 125 F.3d 889, 891 (5th Cir. 1997).

The petition for review is DENIED.