# United States Court of Appeals
## for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**
June 1, 2022

Lyle W. Cayce
Clerk

No. 20-60131

Yolanda Lopez-Perez,

*Petitioner*,

*versus*

Merrick Garland, *U.S. Attorney General*,

*Respondent*.

Petition for Review of an Order of the
Board of Immigration Appeals
BIA No. A209 285 074

Before Jones, Southwick, and Oldham, *Circuit Judges*.
Leslie H. Southwick, *Circuit Judge*:

An asylum petitioner argues that the Board of Immigration Appeals erred in denying her application for asylum, withholding of removal, and protection under the Convention Against Torture. The petition is DENIED.

## FACTUAL AND PROCEDURAL BACKGROUND

Yolanda Lopez-Perez is a native and citizen of El Salvador. She entered the United States illegally on July 28, 2016, at or near Rio Grande City. On September 11, 2016, the Department of Homeland Security

No. 20-60131

("DHS") issued a Notice to Appear ("NTA") charging that Lopez-Perez was removable as an alien present in the United States without a valid entry document.   DHS personally served Lopez-Perez with the NTA on September 19, 2016.  Lopez-Perez appeared before the Immigration Judge ("IJ") on May 18, 2017, admitted the factual allegations of the NTA, and conceded removability.

Thereafter, Lopez-Perez applied for asylum, withholding of removal, and relief under the Convention Against Torture ("CAT").  Her application was based on membership in a particular social group and CAT.  She defined the particular social group as "Salvadoran women in domestic relationship who are unable to leave" or "Salvadoran women who are viewed as property by virtue of their position in a domestic relationship."  She stated that her ex-partner was physically, emotionally, and sexually abusive, but she did not mention any specific incident of abuse.  Lopez-Perez further stated that she feared that she would be tortured and killed by her ex-partner if she returned to El Salvador.

A merits hearing took place on May 22, 2018.  Lopez-Perez testified that she met her ex-partner after he began working at the supermarket where she worked.  Shortly thereafter, she moved in with him, where he became sexually, verbally, psychologically, and physically abusive. She stated that he seriously injured her in November 2015 after she questioned his jealous behavior at a party.  She testified that he grabbed her by the hair, threw her on the sofa, and hit her.  She stated that she did not report the incident to the authorities because her ex-partner had friends in the police force.  Lopez-Perez further supported her belief that the police would not assist her with evidence of two instances, one involving a friend and another concerning her sister, where the police failed to act on reports of domestic violence by refusing to arrest suspects or enforce restraining orders.

No. 20-60131

After the November 2015 incident, Lopez-Perez testified that she left her ex-partner for her mother's home, but he followed her and, fearing harm to her mother, she acquiesced to his demands to return home. When they made it home, her ex-partner threatened to kill her if she ever left him again. She resolved to leave him for good and did so on June 29, 2016. She met one of her four brothers in Guatemala — who gave her money and connected her with a smuggler — and then traveled through Mexico to the United States. Her brothers and mother remain in El Salvador, but Lopez-Perez testified that her ex-partner knew where they lived, and according to her mother, continues to stop by her residence speculating that Lopez-Perez will eventually be deported back to El Salvador.

The IJ denied Lopez-Perez's application of May 22, 2018. He found Lopez-Perez a credible witness. Relying on *Matter of A-R-C-G-*, 26 I. & N. Dec. 338 (BIA 2014), the IJ appeared to conclude that Lopez-Perez's proposed groups — "Salvadoran women in domestic relationships who are unable to leave; or Salvadoran women who are viewed as property by virtue of their position in a domestic relationship" — were particularized social groups. However, he distinguished her circumstance from *A-R-C-G-* because she did not report the abuse to the police. He also noted that while domestic abuse was a problem in El Salvador, Salvadoran law prohibited such abuse and carried prison sentences of one to three years. Consequently, the IJ concluded that she failed to show that the government was unwilling or unable to help her. Without explanation, the IJ further found that she did not establish the requisite nexus between her harm and her particular social group. Accordingly, he denied asylum and withholding of removal. Finally, he concluded that there was insufficient evidence that it was more likely than not that Lopez-Perez would be tortured, and he denied CAT relief.

Lopez-Perez appealed to the BIA. The BIA denied her motion to extend the briefing deadline. Ultimately, she did not file a brief. On January

29, 2020, the BIA affirmed the IJ's decision "without opinion," making the IJ decision administratively final. *See* 8 C.F.R. § 1003.1(e)(4). Lopez-Perez filed a timely petition for review on February 21, 2020.

## DISCUSSION

This court examines a decision by the BIA as a final agency order. *See, e.g.*, *Ghotra v. Whitaker*, 912 F.3d 284, 287 (5th Cir. 2019). However, where the BIA summarily affirms an IJ without further explanation, we review the underlying decision by the IJ. *Moin v. Ashcroft*, 335 F.3d 415, 418 (5th Cir. 2003).

In such a case, we give *de novo* review to jurisdictional and legal issues presented in the IJ's decision. *See Claudio v. Holder*, 601 F.3d 316, 318 (5th Cir. 2010); *Jaco v. Garland*, 24 F.4th 395, 401 (5th Cir. 2021). We examine the IJ's factual determinations, though, under the substantial evidence standard and will not reverse those findings "unless the evidence compels it." *Gonzales-Veliz v. Barr*, 938 F.3d 219, 224 (5th Cir. 2019) (quoting *Wang v. Holder*, 569 F.3d 531, 536–37 (5th Cir. 2009)). Even if we identify some degree of error in the IJ's analysis, we will not remand if doing so would be futile. *E.g., Nguhlefeh Njilefac v. Garland*, 992 F.3d 362, 365 (5th Cir. 2021).

We begin by identifying and resolving a jurisdictional issue. When Lopez-Perez appealed the IJ's decision to the BIA, she provided a Notice of Appeal that contained a short statement of her reasons for the appeal. She also moved for an extension to file a supplemental brief to support her appeal. The motion for an extension was denied, and Lopez-Perez never submitted a brief to the BIA.

Section 1003.3(b) of the Code of Federal Regulations requires that a party "identify the reasons for the appeal in the Notice of Appeal . . . or in any attachments thereto, in order to avoid summary dismissal." 8 C.F.R. § 1003.3(b). At a minimum, the Notice of Appeal "must inform the BIA what was wrong about the immigration judge's decision and why." *Medrano-Villatoro v. INS*, 866 F.2d 132, 133–34 (5th Cir. 1989), *superseded on other grounds by Rioja v. Ashcroft*, 317 F.3d 514 (5th Cir. 2003). A separate written brief or statement usually will, but need not, be filed to support an appealing party's arguments. *See id.* § 1003.3(c). We agree with another circuit that the "alien seeking review by the BIA has the option to supplement the reasons for appeal set forth in the notice with a separate statement or brief. There is no requirement that she do so." *Kokar v. Gonzales*, 478 F.3d 803, 813 (7th Cir. 2007).

The degree of explanation of the alien's arguments must still amount to exhausting the administrative remedies before we may review the merits of a final removal order. *See Wang v. Ashcroft*, 260 F.3d 448, 452 (5th Cir. 2001). For an issue to be preserved for our review, petitioners must have "made some concrete statement before the BIA to which they could reasonably tie their claims." *Omari v. Holder*, 562 F.3d 314, 322 (5th Cir. 2009). We agree with the Seventh Circuit in *Kokar* that if the reasons for appeal from an IJ to the BIA are sufficiently identified in the Notice of Appeal, and even if no brief is there filed, the issues so identified are preserved for our review. *See* § 1003.3(b). To be clear, what must be specifically identified are "the findings of fact, the conclusions of law, or both, that are being challenged. If a question of law is presented, supporting authority must be cited. If the dispute is over the findings of fact, the specific facts contested must be identified." *Id.*

Of course, thorough briefing is required from petitioners in this court. *See Chambers v. Mukasey*, 520 F.3d 445, 448 n.1 (5th Cir. 2008). In addition,

No. 20-60131

we should not overlook that once a brief is filed with the BIA, it becomes the "operative document through which any issues that a petitioner wishes to have considered must be raised." *Claudio v. Holder*, 601 F.3d 316, 319 (5th Cir. 2010).

We now consider the issues that are presented here. Lopez-Perez sought asylum, withholding of removal, and protection under CAT.[1] An applicant seeking asylum must demonstrate that she "is unable or unwilling to avail . . . herself of the protection of [her] country because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1101(a)(42)(A). To qualify for a withholding of removal, on the other hand, the applicant "must show that 'it is more likely than not' that [her] life or freedom would be threatened by persecution on account of one of the five categories mentioned under asylum: race, religion, nationality, membership in a particular social group, or political opinion." *Efe v. Ashcroft*, 293 F.3d 899, 906 (5th Cir. 2002) (quoting 8 C.F.R. § 208.16(b)(1)). An applicant's failure to carry her burden on asylum forecloses her qualification for a withholding of removal. *See Ghotra*, 912 F.3d at 288.

Lopez-Perez based her application for asylum on her membership in a particular social group. An applicant seeking asylum or withholding of

---

[1] Protection under CAT requires an applicant to "establish that 'it is more likely than not' that [s]he would be tortured in the proposed country of removal." *Ghotra*, 912 F.3d at 288. (quoting 8 C.F.R. § 208.16(c)(2)). "Torture is defined as any act by which severe pain or suffering, whether physical or mental, is intentionally inflicted on a person . . . by or at the instigation of or with the consent or acquiescence of a public official acting in an official capacity or other person acting in an official capacity." 8 C.F.R. § 208.18(a)(1). Lopez-Perez does not brief any CAT-specific arguments on appeal, so that issue is forfeited. *Jaco*, 24 F.4th at 401 n. 1.

No. 20-60131

removal based on membership in a particular social group must make three showings. *See Jaco*, 24 F.4th at 402. First, she must demonstrate that she belongs to a cognizable social group. *Id.* Second, she must establish a "nexus" between the persecution she has suffered and her membership in the social group. *Id.* Finally, she must show that the government in the country from which she flees "is either unwilling or unable to protect her from the persecution." *Id.*

Lopez-Perez argues here that the IJ erred under *Matter of A-R-C-G-* by concluding that she had not established a nexus between her persecution and her social group. Further, she argues that the IJ incorrectly decided that the government of El Salvador was willing and able to protect her.[2] These issues were identified in her Notice of Appeal and are preserved for our review here.

It is true that the IJ concluded that Lopez-Perez had not demonstrated the requisite nexus and further that she had not shown that the government was unable or unwilling to help her. Although the IJ's analysis was cursory, we nonetheless conclude that his decision must be upheld because remand would be futile. *Jaco*, 24 F.4th at 406. The IJ intimated that Lopez-Perez's proffered social groups — "Salvadoran women in domestic relationships who are unable to leave; or Salvadoran women who are viewed as property by virtue of their position in a domestic relationship" — were cognizable.

---

[2] Lopez-Perez also argues for the first time that we should remand to the IJ for consideration in light of intervening decisions in *Matter of A-B-*, 27 I. & N. Dec. 316 (Att'y Gen. 2018) and *Grace v. Whitaker*, 344 F. Supp. 3d 96 (D.D.C. 2018), *aff'd in part, rev'd in part sub nom. Grace v. Barr*, 965 F.3d 883 (D.C. Cir. 2020). We decline this invitation. In addition to the fact that this argument was not raised in her Notice of Appeal, *Matter of A-B-* has been overruled, *see A-B- III*, 28 I. &. N Dec. 307 (Att'y Gen. 2021), and this court specifically rejected *Grace* in *Gonzales-Veliz*, 938 F.3d at 233–34. *See also Meza Benitez v. Garland*, No. 19-60819, 2021 WL 4998678, at *4 (5th Cir. Oct. 27, 2021) (explaining this Circuit's rejection of *Grace*).

No. 20-60131

We have disagreed, holding that circularly defined social groups are not cognizable. *See id.* at 405; *accord Gonzales-Veliz*, 938 F.3d at 226. Indeed, the social groups identified in *Jaco* are nearly identical to those claimed by Lopez-Perez: "Honduran women who are unable to leave their domestic relationships . . . and Honduran women viewed as property because of their position in a familial relationship." *Jaco*, 24 F.4th at 399. Because the IJ is bound to follow the law of this circuit on remand, he would be forced to conclude that Lopez-Perez's social groups were not cognizable, thus ending the analysis. *See In re Ramos*, 23 I. & N. Dec. 336, 341 (BIA 2002) (noting that the BIA is "unquestionably bound" to follow circuit court rulings).

We DENY the petition for review.