# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

July 28, 2023

Lyle W. Cayce
Clerk

No. 21-60920

Denilson Alexis Morazan-Castro,

*Petitioner*,

*versus*

Merrick Garland, *U.S. Attorney General*,

*Respondent*.

Petition for Review of an Order of the
Board of Immigration Appeals
Agency No. A089 099 603

Before Wiener, Southwick, and Duncan, *Circuit Judges*.
Leslie H. Southwick, *Circuit Judge*: [*]

The Board of Immigration Appeals dismissed petitioner's appeal from an order of the immigration judge denying his application for asylum, withholding of removal, and protection under the Convention Against Torture. The central issue presented for our review is whether petitioner should have been classified as an unaccompanied alien child when he entered the country in 2008. We find no error and DENY the petition for review.

---

[*] This opinion is not designated for publication. *See* 5th Cir. R. 47.5.

No. 21-60920

## FACTUAL AND PROCEDURAL BACKGROUND

Denilson Alexis Morazan-Castro is a native and citizen of Honduras. In September 2008, when he was nine years old, he entered the United States with his 12-year-old brother, Walter Rene Morazan-Castro, without being admitted or paroled. They were each issued a notice to appear, and removal proceedings were initiated against them in immigration court.[1]

Morazan-Castro was initially detained but was released in December 2008 to his aunt in Texas. In May 2009, the immigration judge ("IJ") ordered administrative closure of Morazan-Castro's court proceedings to allow him to file an asylum application with the United States Citizenship and Immigration Services ("USCIS"), which has initial jurisdiction over an asylum application filed by an unaccompanied alien child ("UAC"). *See* 8 U.S.C. § 1158(b)(3)(C); William Wilberforce Trafficking Victims Protection Reauthorization Act of 2008, Pub. L. No. 110-457, 122 Stat. 5044, 5081.

In January 2010, Morazan-Castro filed an I-589 application with USCIS seeking asylum, withholding of removal, and protection under the Convention Against Torture ("CAT"). On his application, in response to the question regarding the "Current Location" of his parents and siblings, he listed that his mother and brother were in the "same" location as was he. In February 2010, after filing his application, Morazan-Castro, was interviewed by an asylum officer. USCIS issued notice in July 2010, explaining that it lacked jurisdiction over Morazan-Castro's I-589 application because he did not qualify as a UAC. The notice stated, without elaboration, that, at the time of his filing, he had "a parent or legal guardian in the United States who is available to provide care and physical custody of" him.

─────────────────────

[1] The brothers' cases were companion cases, but Walter's case was severed and is not part of this petition for review.

No. 21-60920

Because USCIS concluded that it lacked jurisdiction, the case returned to immigration court. In April 2012, Morazan-Castro moved for administrative closure of his case on the ground that USCIS erred in concluding he was not a UAC. He maintained that, even though he had been released to his aunt's custody and was in the same location as his mother at the time of his I-589 application, there was insufficient evidence to show that he failed to meet the legal definition of a UAC. Additionally, he filed a separate, alternative motion for discovery of recordings, interview notes, and all other documents relating to his I-589 application.

The IJ considered the motions at a May 2012 hearing. The judge ruled Morazan-Castro was not a UAC and denied his motion for administrative closure.[2] Regarding the discovery motion, the IJ determined it would remain pending while awaiting a resolution on his outstanding records request under the Freedom of Information Act. That discovery motion was not discussed in subsequent proceedings before the IJ.

Morazan-Castro's case was continued without further action until, in October 2018, the IJ conducted a hearing on the I-589 application. In his application, filed over eight years prior to that hearing, Morazan-Castro claimed that gang members in Honduras sought to recruit him when he was a child and threatened his life in attempts to get him to join the gang. He sought asylum, withholding of removal, and protection under CAT, based on persecution because of his membership in a particular social group ("PSG").

---

[2] After denying the motion, the IJ stated that, because Morazan-Castro was presently residing with his mother, he was not a UAC. Morazan-Castro's counsel disagreed: "[T]he critical time is the time of filing the application in 2010. That's by statute. They live with their — well, they didn't live with their mother at that time because she was not available to take care of them because of medical reasons. They lived with their aunt, auntie. But they do live with their mother now. That's true."

3

At the hearing, Morazan-Castro identified his proposed PSG as eight-year-old Hondurans who were recruited by gangs. He testified that he came to the United States to escape gangs in Honduras, and that, when he was eight years old, he was threatened by gang members once or twice a month for 10 months while they attempted to recruit him. He described the alleged gang members as 10 youths who approached him after school, hit him in the arm with sticks, and threatened to harm his family if he reported them. The IJ denied all relief and ordered Morazan-Castro removed to Honduras.

The Board of Immigration Appeals ("BIA") affirmed the denial of asylum and withholding of removal on the ground that Morazan-Castro's proposed PSG was not cognizable. Alternatively, it explained that, because Morazan-Castro was then 23 years old, he had not been a member of his proposed PSG for 15 years and factually could no longer be a member of such a group. As for protection under CAT, the BIA deemed this issue waived because Morazan-Castro failed to challenge it.

In addition to challenging the denial of asylum and withholding of removal, Morazan-Castro asserted that the IJ lacked jurisdiction because Morazan-Castro was a UAC who fell under USCIS's jurisdiction and had erred in denying a continuance when his brother's case was severed. The BIA found no error.

Morazan-Castro timely petitioned this court for review. Later, he moved to supplement the record with the two motions filed in 2012 — one for administrative closure and the other for discovery. The Executive Office for Immigration Review ("EOIR") provided a supplemental record containing those motions. Although EOIR certified that the motions were received in immigration court, it clarified that they were not included in the record reviewed by the BIA.

No. 21-60920

The Government filed an unopposed motion to remand the proceedings to the BIA on the ground that the record before the BIA was incomplete because it did not include Morazan-Castro's 2012 motions. It asserted that, because Morazan-Castro referred to the motions in his BIA brief, remand was appropriate to permit the BIA to consider the effect, if any, of the motions regarding his UAC status. A panel of this court denied the initial motion.

The Government, with the consent of petitioner, then filed a joint motion to have this court reconsider the denial of a remand. One of its arguments was that this court had allowed supplementation of the record with two documents which were presented to the USCIS on the UAC claim but which were not later part of the record before the IJ or the BIA. "Therefore," the Government argued, "the agency is unable to certify a supplemental record satisfying this Court's April 6, 2022, order" which allowed supplementation of the record. That, at least, seems to be simply a technical point about this court considering documents which the IJ and BIA never had and which counsel did not feel able to certify as the proper documents.

In fact, alternative relief suggested by the Government was "that the Court accept the missing 2012 motions as attached by Petitioner to his motion to supplement and that certification by EOIR of a supplemental record not be required." That alternative certainly suggests that a significant concern was the specific procedure by which we supplemented the record.

As the merits panel, we have authority to overturn a ruling by a motions panel in earlier stages of the case. *See Veasey v. Abbott*, 870 F.3d 387, 392 (5th Cir. 2017). We will analyze the remand motions later in this opinion.

No. 21-60920

## DISCUSSION

Before this court, Morazan-Castro contends that the BIA erred in determining that he was not a UAC, that the administrative record should have included the materials he moved to discover relating to his 2010 asylum interview with USCIS, and that the BIA erred in determining he failed to establish a cognizable PSG.

Morazan-Castro maintains that, because he was a UAC, his case should have proceeded with USCIS rather than with the IJ. As stated above, pursuant to the Act regarding trafficking victims, USCIS has initial jurisdiction over an asylum application filed by a UAC. *See* § 1158(b)(3)(C). A UAC is defined as an individual who:

  (A)  has no lawful immigration status in the United States;
  (B)  has not attained 18 years of age; and
  (C)  with respect to whom—
    (i)  there is no parent or legal guardian in the United States; or
    (ii)  no parent or legal guardian in the United States is available to provide care and physical custody.

6 U.S.C. § 279(g)(2); *see* § 1158(b)(3)(C) (referring to UAC definition in § 279).

Morazan-Castro argues that his aunt was never his legal guardian within the meaning of Section 279(g)(2)(C) and that the evidence failed to show whether, for purposes of Section 279(g)(2)(C)(ii), his mother was able to provide him care and physical custody.

These assertions regarding Morazan-Castro's claimed status as a UAC coincide with the previous motions for remand and the Government's position in our court. The Government reiterates that remand is appropriate to allow the BIA to make the initial evaluation of Morazan-Castro's status

6

based on a complete record. Because these issues overlap, we start with the propriety of remand.

### I.    *Government's request for voluntary remand*

Earlier in the proceedings here, the Government filed an unopposed motion to remand to the BIA. Another panel of this court denied the motion and later denied the parties' joint motion to reconsider. Both motions were based on the argument that the record before the BIA was incomplete because it did not include Morazan-Castro's 2012 motions for administrative closure and discovery. We examine those motions.

The first was a motion for administrative closure for lack of jurisdiction. It included the following assertion regarding Denilson Morazan-Castro's UAC status:

> Denilson's asylum application indicates that his mother's location is the same as his as well as five siblings. This is insufficient evidence that Denilson's mother was in the U.S. when he filed for asylum in 2010 or more importantly, if she was available to provide care and physical custody.

The second was a motion for discovery. It sought the asylum officer's interview notes, arguing the UAC issue cannot be determined without them.

In his brief to the BIA, Morazan-Castro described the motions and reasons they were filed, stated that the UAC determination was incorrect because he "did not have a parent who could take care of him," and remarked on his disadvantage of not having access to the asylum officer's notes. We consider those assertions to have put before the BIA the significance of what the missing motions record would have shown.

Evaluating the omitted motions for their possible effect before the BIA, we will not disturb this court's earlier denials of a remand, as the record

was sufficiently developed for the BIA's ruling on Morazan-Castro's UAC status.

## II.     *Merits of petition for review*

The BIA found that Morazon-Castro was not a UAC because he was cared for by his aunt and mother and that his proposed PSG of "8 year olds being subject to gang recruitment in Honduras" was not cognizable because it was "impermissibly defined in a circular manner."

In considering the BIA's decision and the IJ's, to the extent it influenced the BIA, legal conclusions are reviewed *de novo* and factual findings are reviewed for substantial evidence. *See, e.g.*, *Orellana-Monson v. Holder*, 685 F.3d 511, 517–18 (5th Cir. 2012). Under the substantial-evidence standard, a petitioner must demonstrate "that the evidence is so compelling that no reasonable factfinder could reach a contrary conclusion." *Chen v. Gonzales*, 470 F.3d 1131, 1134 (5th Cir. 2006).

As for Morazan-Castro's challenge regarding the BIA's finding that he was not a UAC, the record shows his asylum application indicated that his mother's "Current Location" and his own in 2010 were the same. Further, he told the IJ in May 2012 that he lived with his mother at that time. He fails to show that substantial evidence does not support the BIA's determination. *See id.*

Next, the BIA denied Morazan-Castro asylum and withholding of removal based on his failure to show a cognizable PSG. To be eligible for asylum, an applicant's showing must include "that race, religion, nationality, membership in a [PSG], or political opinion was or will be at least one central reason for persecuting the applicant." 8 U.S.C. § 1158(b)(1)(B)(i). Withholding of removal requires a showing that persecution on account of one of those protected grounds is "more likely than not." *Jaco v. Garland*, 24 F.4th 395, 401 (5th Cir. 2021) (quotation marks and citation omitted).

No. 21-60920

Before the IJ, Morazan-Castro identified his PSG as eight-year-old Hondurans who were subject to gang recruitment. In his brief to the BIA, he identified his PSG as "individuals (children) escaping forced gang recruitment and violence in Honduras." Now, in this court, he does not argue that the BIA erred when it determined that a PSG of eight-year-old Hondurans subjected to gang recruitment was not cognizable.

Before this court, Morazon-Castro maintains the IJ and BIA erroneously defined his PSG by failing to consider his family and living conditions in Honduras. Morazan-Castro's failure to raise this assertion before the BIA renders it unexhausted.

The petition for review is DENIED.