# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 18-60115

United States Court of Appeals
Fifth Circuit

**FILED**
May 6, 2019

Lyle W. Cayce
Clerk

WENDY YESSENIA CANTARERO-LAGOS;
HENRY OMAR BONILLA-CANTARERO,

     Petitioners

v.

WILLIAM P. BARR, U.S. ATTORNEY GENERAL,

     Respondent

---

Petition for Review of an Order of the
Board of Immigration Appeals

---

Before DAVIS, JONES, and DENNIS, Circuit Judges.

EDITH H. JONES, Circuit Judge:

Petitioners Wendy Cantarero-Lagos and her minor son, Henry Bonilla-Cantarero, filed a petition for review challenging an order by the Board of Immigration Appeals ("BIA") denying their applications for asylum and withholding of removal. They claim that the BIA reversibly erred by refusing to consider a reformulated particular social group ("PSG") on appeal. Because the BIA is not required to consider a PSG on appeal that was never presented to the immigration judge ("IJ"), the BIA's order is AFFIRMED.

No. 18-60115

## BACKGROUND

Petitioner Wendy Cantarero-Lagos came to the United States from Honduras with her minor son, Petitioner Henry Bonilla-Cantarero, in June 2014. After they were apprehended by Border Patrol agents, Petitioners admitted to crossing the border illegally, conceded removability, and filed applications for asylum and withholding of removal. At their hearing before an IJ, Cantarero-Lagos testified that she and her son left Honduras because, in 2012, she had been threatened by gang members who were trying to extort her and, in 2001, her father had attempted to rape her.[1] She did not report either incident to the police, nor did she experience continued threats from either the gang members or her father after the 2012 and 2001 incidents. Cantarero-Lagos told the IJ that she feared returning to Honduras with her son because gang activity and rapes were on the rise and she doubted the ability of law enforcement to provide protection.

After Cantarero-Lagos finished testifying, her attorney defined her PSG as "single Honduran women, aged 14 to 30, who are victims of sexual abuse within the family and whom the government fails to protect."[2] However, when the IJ expressed skepticism about this definition, her attorney revised the PSG to "single Honduran women, age 14 to 30, who are victims of sexual abuse within the family and who cannot turn to the government." In an oral decision, the IJ denied the petitions for relief. Although the IJ found Cantarero-Lagos's testimony credible, he concluded that her PSG was not cognizable and that it lacked any nexus to her cited harms.

---

[1] In her briefing to this court, Cantarero-Lagos stated that "[t]he gangs threatened and harassed her for ten years prior to her leaving Honduras." However, her testimony only identified three incidents in 2012, and the IJ's decision only referenced those three 2012 incidents.

[2] Bonilla-Cantarero's application is based on his mother's claims.

2

No. 18-60115

On appeal before the BIA, Cantarero-Lagos conceded that the PSG she presented to the IJ "fails for many reasons." Arguing, however, that "the evidence lends itself to a more cognizable and logically sound group," Cantarero-Lagos asked the BIA to consider a reformulated PSG: "Honduran women and girls who cannot sever family ties." She asserted that this new PSG "naturally [arose] from the substance of the evidence presented at the merits hearing" and was thus appropriate for the BIA's consideration.

In a published opinion, the BIA dismissed her appeal, holding that "[a]n applicant seeking asylum or withholding of removal based on membership in a particular social group must clearly indicate on the record before the Immigration Judge the exact delineation of any proposed particular social group." *Matter of W-Y-C- & H-O-B-*, 27 I. & N. Dec. 189 (BIA 2018). Reasoning that "[t]he Board is an appellate body whose function is to review, not to create a record," the BIA explained that "[w]here, as here, an applicant delineates a social group for the first time on appeal, the Immigration Judge will not have had an opportunity to make relevant factual findings, [and the BIA] cannot do [so] in the first instance on appeal." *Id.* at 190–91 (internal quotation marks and citations omitted); *cf. id.* at 189 ("The [BIA] generally will not address a newly articulated particular social group that was not advanced before the [IJ]."). Furthermore, because "respondent was represented by counsel below and could have advanced this newly delineated group before the Immigration Judge," the BIA decided not to remand the case back to the IJ. *Id.* at 192.

Cantarero-Lagos and Bonilla-Cantarero filed this petition for review.

No. 18-60115

## STANDARD OF REVIEW

On a petition for review, this court "review[s] the BIA's decision and only consider[s] the IJ's decision to the extent that it influenced the BIA." *Shaikh v. Holder*, 588 F.3d 861, 863 (5th Cir. 2009). "The BIA's factual findings are reviewed for substantial evidence." *Ghotra v. Whitaker*, 912 F.3d 284, 287 (5th Cir. 2019). The BIA's legal determinations—"including whether the Board applied an inappropriate standard or failed to make necessary findings"—are generally reviewed *de novo,* "unless a [legal] conclusion embodies the BIA's interpretation of an ambiguous provision of a statute that it administers," in which case its interpretation may be entitled to *Chevron* deference. *Id.* (internal citation omitted); *Orellana-Monson v. Holder*, 685 F.3d 511, 517 (5th Cir. 2012) (internal citation and alteration omitted). *Auer* deference may be appropriate if the BIA's legal conclusion interprets a regulation it administers. *See Auer v. Robbins*, 519 U.S. 452, 461–63, 117 S. Ct. 905, 911–12 (1997).

Here, the government argues that the BIA's opinion is entitled to both *Chevron* and *Auer* deference. These doctrines do not apply. Although the BIA's opinion is "a precedential decision, which relies in part on the Board's interpretation of the adjudication scheme set forth in the [Immigration and Nationality Act ("INA")]," the government has not identified any ambiguous phrase in the INA that the BIA's opinion interpreted. Thus, *Chevron* deference is inappropriate. Similarly, although "the agency's decision rested, in part, on [an invocation] of its standard of review regulation, 8 C.F.R. § 1003.1(d)(3)," the BIA's opinion does not purport to *interpret* the regulation but rather to *apply* it. Consequently, *Auer* deference is also inappropriate, and this court will review the BIA's legal determinations *de novo*.

4

No. 18-60115

## DISCUSSION

Petitioners contend that the BIA reversibly erred by refusing to consider their reformulated PSG. They further claim that the BIA announced "an excessively strict standard" when it concluded that applicants must give an "exact delineation" of their PSG to the IJ. Finally, Petitioners argue that even if the BIA did not err in its legal holdings, the legal standards announced in its opinion should not be "retroactively" applied to their case. Petitioners' arguments are unavailing.

"To qualify for asylum, an applicant must establish that he is 'unable or unwilling to return to . . . [and] avail himself or herself of the protection of [his home] country because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion.'" *Ghotra*, 912 F.3d at 288 (brackets in original) (quoting 8 U.S.C. § 1101(a)(42)(A)); *see also* 8 U.S.C. § 1158(b)(1)(B)(i). "To qualify for withholding of removal, an applicant must establish that 'it is more likely than not' that 'his life or freedom would be threatened' in the proposed country of removal due to his race, religion, nationality, membership in a particular social group, or political opinion, which poses a higher bar than the 'well-founded fear' standard for asylum." *Id.* (internal citations omitted); *accord* 8 U.S.C. § 1231(b)(3).

For both asylum and withholding of removal, "to establish persecution based on membership in a particular [social] group, the petitioners must show that they are members of a group of persons that share a common immutable characteristic that they either cannot change or should not be required to change because it is fundamental to their individual identities or consciences." *Orellana-Monson*, 685 F.3d at 518 (internal quotation marks and citations omitted). To be cognizable, a PSG must have sufficient particularity that its

5

membership is "delimit[ed]" and its members must have sufficient "shared characteristics" that the group is "readily identifiable in society." *Id.* at 519. As a third requirement, an applicant must prove a nexus between her PSG and feared persecution. Failing any of these criteria, a request for relief may be denied.

## I.    Refusal to Consider a Reformulated PSG

Petitioners advance three arguments why the BIA reversibly erred by refusing to consider their reformulated PSG on appeal. First, they contend, whether a PSG is cognizable presents a question of law whose resolution does not require the IJ to make specific factual findings. Second, to the extent a PSG depends on factual findings, the IJ in this case made factual findings that would allow the BIA to assess the reformulated PSG on appeal. Third, the reformulated PSG is not "substantially different" from the PSG presented to the IJ. Primarily on these bases, Petitioners argue that the BIA abdicated its responsibility by refusing to evaluate their reformulated PSG. Each argument is wanting.

First, although the cognizability of a PSG presents a legal question, its answer indisputably turns on findings of fact. *See, e.g.*, *Hernandez-De La Cruz v. Lynch*, 819 F.3d 784, 786–87 (5th Cir. 2016) (noting that "social distinction" is premised on "factual findings"); *Thuri v. Ashcroft*, 380 F.3d 788, 791 (5th Cir. 2004) (per curiam) ("[W]hether an alien has demonstrated the requisite nexus between persecution and [a protected ground] is a question of fact reviewed for substantial evidence."); *S.E.R.L. v. Attorney Gen. United States of Am.*, 894 F.3d 535, 555 (3d Cir. 2018) ("The BIA has repeatedly stated that the particular social group determination depends on the facts of the case at hand."). Because factual findings are the province of the IJ, the BIA did not err by refusing to find facts in the first instance. *See* 8 C.F.R. § 1003.1(d)(3).

No. 18-60115

Second, the record does not support Petitioners' claim that the IJ made factual findings in this case that would have enabled the BIA to evaluate their reformulated PSG on appeal. The PSG presented to the IJ was "single Honduran women, age 14 to 30, who are victims of sexual abuse within the family and who cannot turn to the government," while the reformulated PSG was "Honduran women and girls who cannot sever family ties." Although Petitioners are correct that a woman's inability to turn to the government may contribute to her inability to sever family ties, the two PSGs lend themselves to different inquiries. For instance, the IJ made no findings on whether Cantarero-Lagos could sever ties with her father—i.e., whether she belonged to the reformulated PSG.[3] Nor did the IJ make findings to support the particularity or social distinctiveness of the reformulated PSG—i.e., whether the PSG was cognizable—or the nexus between the reformulated PSG and Cantarero-Lagos's cited harms. Therefore, although it is within the BIA's prerogative to evaluate a reformulated PSG based on the record below, the BIA did not reversibly err by concluding in this case that the IJ "did not have the opportunity to make the underlying findings of fact that are necessary to our analysis." *Matter of W-Y-C- & H-O-B-*, 27 I. & N. Dec. at 192.

For similar reasons, Petitioners' third claim that the reformulated PSG is not "substantially different" from the original PSG fails. In addition to raising different factual questions as to cognizability and nexus, the reformulated PSG is either incomprehensibly vague or impermissibly overbroad. Being unable to "sever family ties" can mean anything from a requirement to care for a debilitated family member to a social system that

---

[3] As the government points out, the record actually supports a finding that Cantarero-Lagos *could* sever family ties, as she testified that she never saw her father again after the attempted rape.

forbids marriage without patriarchal consent. This description is hardly confined to the actions of police, criminal gangs, or intrafamilial sexual predators. It is linguistically and logically "substantially different" from the original PSG.

## II.    "Exact Delineation" Standard

Petitioners next argue that the BIA's opinion announced "an excessively strict standard for waiver of a claim" when it concluded that applicants must give an "exact delineation" of their PSG to the IJ, and essentially "short shrifted the role that IJs play in helping formulate social groups." The premise of this argument is that courts generally only require applicants to "adequately raise" an issue to preserve it, and thus the "exact delineation" standard is both "excessively strict" and "inconsistent with Fifth Circuit cases more liberally construing claims for asylum and related forms of relief." In addition, Petitioners point out that "although the burden of proof is ultimately on the [applicant]," "[t]he BIA has previously explained that . . . the [IJ] should take an active role in helping the [applicant] develop her legal theory from the facts presented." Petitioners (and amici) forecast that, by requiring applicants to provide an exact delineation of their PSGs to the IJ, the BIA's opinion will contravene longstanding practice and good policy by discouraging IJs from assisting applicants in formulating their PSGs.

Petitioners' concerns are overblown. In the first place, as Petitioners concede, the Immigration and Nationality Act places the burden on the applicant to demonstrate eligibility for asylum and withholding of removal. 8 U.S.C. § 1158(b)(1)(B)(i) (asylum); 8 U.S.C. § 1231(b)(3)(C) (withholding of removal). Requiring asylum and withholding applicants to delineate their PSG to an IJ is simply a logical extension of this burden of proof. *Cf. Matter of A-T-*, 24 I. & N. Dec. 617, 623 n.7 (2008) ("[B]ecause it is the applicant's burden

in the first instance . . . the applicant must initially identify the particular social group or groups in which membership is claimed.").

In addition, the BIA's acknowledgement that applicants have a responsibility to articulate their PSG to the IJ does not in any way impede IJs' ability to assist applicants in carrying out that responsibility. Indeed, the BIA itself noted the IJs' obligation to "seek clarification, as was done in this case," where "an applicant is not clear as to the exact delineation of the proposed social group." *Matter of W-Y-C- & H-O-B-*, 27 I. & N. Dec. at 191. As the IJ's exchange with Petitioners' attorney demonstrates, seeking clarification can include expressing skepticism at the viability of a PSG and sharing substantive concerns about why the definition is not cognizable. Nothing in the BIA's opinion forbids or inhibits IJs from continuing this practice.

Finally, the rule advocated by Petitioners that would require the BIA to adjudicate reformulated PSGs on appeal is incompatible with a rational administrative process. Petitioners conceded the problems in their briefing to the BIA by acknowledging the "notice issue" that would arise as reformulated PSGs deprived the government of its opportunity to develop relevant facts before the IJ. Such a rule would thwart the appellate scheme, posing proof problems or requiring remands to the IJ where, as here, the IJ was unable to develop the record to account for issues material to a reformulated PSG. *See* 8 C.F.R. § 1003.1(d)(3)(iv) (explaining that, aside from one narrow exception, "the Board will not engage in factfinding in the course of deciding appeals" and that "[a] party asserting that the Board cannot properly resolve an appeal without further factfinding must file a motion for remand"). The BIA's practice, mirroring conventional appellate practice throughout our judicial and administrative systems, is acceptable.

No. 18-60115

### III.    "Retroactive" Application

Finally, Petitioners contend that even if the BIA did not err in its holdings, the legal standards its opinion announced should not be applied "retroactively" to their case.  In support, they point to this court's decision in *McDonald v. Watt*, which held that "in appropriate cases the Court may in the interest of justice make [a new agency rule announced in adjudication] prospective."  653 F.2d 1035, 1042 (5th Cir. 1981) (internal citation omitted).  In *McDonald*, this court adopted the *Chenery* balancing test to decide whether a new adjudicative rule should be applied retroactively.  The test weighs "the frustration of the expectations of those who have justifiably relied on a prior rule" against "the partial frustration of the statutory purpose" that results from purely prospective relief.  *Id.* at 1043–44.  Applying that test, the *McDonald* court refused retroactively to apply an adjudicative rule that did not "technically overrule any 'official decision'" because "it was unquestionably 'an abrupt departure from a well established practice' of the agency'" and "the harm to plaintiffs' justifiable reliance interests [was] substantial[,] . . . unfairly and unnecessarily inflicted."  *Id.* at 1044–45 (internal citation and alteration omitted).

Petitioners contend that this case is like *McDonald*: even though *Matter of W-Y-C- & H-O-B-* does not overrule any express precedent, it deviates from the BIA's past practices of considering reformulated PSGs on appeal and sometimes reformulating PSGs on its own initiative.  They insist that the law in this area was unsettled before the BIA's opinion, as evidenced by the BIA's felt need for supplemental briefing and DHS's failure to object to their reformulated PSG until *after* the BIA requested further briefing.  Petitioners assert they relied on the ambiguity: "Had the requirement of exact delineation and prohibition on reformulation already been rules at the time," they claim,

10

No. 18-60115

"[we] would have taken more care to delineate the group clearly and precisely early on in the proceedings." While characterizing their own reliance interests as great, Petitioners insist that any burden imposed on the administrative process by a prospective application of *Matter of W-Y-C- & H-O-B-* would be minimal. Petitioners conclude by asserting that the outcome in *Matter of W-Y-C- & H-O-B-* deprived them of "a fundamentally fair proceeding" in violation of due process.

This court disagrees. Even if *Matter of W-Y-C- & H-O-B-* announced a new legal rule, which is dubious, Petitioners must possess a "justifiable reliance interest" to avoid retroactive application. *See McDonald*, 653 F.2d at 1042–45. Here, although Petitioners arguably relied on their belief that the BIA would accept reformulated PSGs on appeal, that reliance was not justified. This court has long held that "the BIA need not consider an issue raised for the first time on appeal." *Eduard v. Ashcroft*, 379 F.3d 182, 195 n.14 (5th Cir. 2004). Several other circuits agree.[4] In addition, recent decisions in this court and others confirm that this principle applies to PSGs.[5] *See, e.g., Antunez-Blanco v. Whitaker*, 744 F. App'x 886, 886 (5th Cir. Dec. 10, 2018) (per curiam) (BIA did not err by refusing to consider a PSG that was not presented to the IJ); *Franco-Reyes v. Sessions*, 740 F. App'x 420, 421–22 (5th Cir. Oct. 19, 2018) (per curiam) (same); *Duarte-Salagosa v. Holder*, 775 F.3d 841, 845 (7th Cir. 2014) (same); *Rasiah v. Holder*, 589 F.3d 1, 6 (1st Cir. 2009) (same). Given the BIA's role as an appellate body, Petitioners had notice that the BIA need not

---

[4] *See, e.g., Prabhudial v. Holder*, 780 F.3d 553, 555 (2d Cir. 2015) (per curiam) ("[T]he BIA may refuse to consider an issue that could have been, but was not, raised before an IJ."); *Pinos-Gonzalez v. Mukasey*, 519 F.3d 436, 440–41 (8th Cir. 2008) (same); *Torres de la Cruz v. Maurer*, 483 F.3d 1013, 1022–23 (10th Cir. 2007) (same).

[5] These Fifth Circuit cases are unpublished and thus not binding on this court; however, they are persuasive as evidence of this court's prior practice under similar facts.

consider claims raised for the first time on appeal.[6]    Indeed, Petitioners' briefing to the BIA suggests an awareness that their reformulated PSG rested on tenuous ground.[7]  Reliance under these circumstances was not justified.

Nor does the outcome in *Matter of W-Y-C- & H-O-B-* deprive Petitioners of due process.  Given the well-established principles and precedents cited above, Petitioners were on notice that appellate bodies like the BIA are not required to consider arguments made for the first time on appeal.  Moreover, Petitioners were represented by counsel at each material stage of their proceedings, and the IJ gave their counsel multiple opportunities at the hearing to clarify or revise their proposed PSG in view of his concerns about

---

[6] That the BIA, on its own initiative, at times considers reformulated PSGs on appeal or itself reformulates PSGs *sua sponte* does not change this result.  There is a vast difference between recognizing a discretionary practice of the BIA and claiming it as an entitlement.

[7] In her briefing to the BIA, Cantarero-Lagos stated:

> It is *arguable* that a respondent may adopt a new particular social group on appeal when that social group so naturally arises from the substance of the evidence presented at the merits hearing. . . . *There does not appear to be*, however, a statutory nor judicially-made requirement that the particular social group be articulated in the course of proceedings.  *Nor does there seem to be* a bar on utilizing on appeal a particular social group that is distinct from the one articulated during the merits hearing.  Counsel acknowledges that using a new and distinct particular social group, even one that arises so naturally from the testimony and other admitted evidence, *creates a notice issue* because the government did not have the opportunity to cross examine the Respondents with respect to this group they claim to belong to.  However, it is also true that . . . counsel for DHS was not allowed such an opportunity [in this case] as the I.J. did not ask for an articulation [of a PSG] until the beginning of Respondents' counsel's closing statement.  This lends further support to the argument that an articulated particular social group is not required to carry out proceedings and therefore a respondent should not be bound to any articulated particular social group.

(emphasis added).

No. 18-60115

its viability.  That Petitioners failed to substantively revise their PSG based on the IJ's concerns does not entitle them to a second bite at the apple.

## CONCLUSION

For the foregoing reasons, this court **AFFIRMS** the BIA's order.

No. 18-60115

JAMES L. DENNIS, Circuit Judge, concurring in the judgment.

I agree with the majority's conclusion that the BIA does not err when it chooses not to consider whether a person is entitled to asylum protection based on asserted membership in a particular social group (PSG) that is articulated for the first time on appeal. I write separately, however, to express disagreement with the exacting and unnecessary "exact delineation" requirement.

The BIA has explained that "a cooperative approach in Immigration Court is particularly appropriate" because the BIA, Immigration Judges, and the Immigration and Naturalization Service "all bear the responsibility of ensuring that refugee protection is provided where such protection is warranted by the circumstances of an asylum applicant's claim." *In Re S-M-J-*, 21 I. & N. Dec. 722, 723-24 (BIA 1997). A person's circumstances warrant protection when she is persecuted or fears persecution on account of her race, religion, nationality, membership in a particular social group, or political opinion. *See* 8 U.S.C. §§ 1158(b)(1)(B)(i), 1101(a)(42)(A).

Under the majority's decision, however, the BIA is permitted to deny relief to people who have satisfied these asylum requirements but have failed to navigate the labyrinth of "exact[ly] dilenat[ing]" a PSG. Defining a PSG is unspeakably complex and the requirements ever-changing. *See generally Ardestani v. I.N.S.*, 502 U.S. 129, 138 (1991) (noting "the complexity of immigration procedures[] and the enormity of the interests at stake"); *Rojas-Pérez v. Holder*, 699 F.3d 74, 81-82 (1st Cir. 2012) (noting a "growing circuit split on the" social visibility requirement for articulating a valid PSG); *Fatin v. I.N.S.*, 12 F.3d 1233, 1238 (3d Cir. 1993) ("Both courts and commentators have struggled to define 'particular social group.' Read in its broadest literal sense, the phrase is almost completely open-ended."). Even experienced

14

immigration attorneys have difficulty articulating the contours of a PSG.  And if this "exact delineation" requirement is further imposed on pro se asylum seekers, they will not stand a chance.

Someone who faces persecution on account of a protected ground is no less deserving of asylum's protections because of her inability to exactly delineate a convoluted legal concept.  Such a requirement runs counter to the BIA's responsibility to ensure that refugee protection is provided where the circumstances warrant it, thwarts the cooperative approach emphasized by the BIA, and is devoid of any connection to the substance of an individual's claim. Accordingly, I cannot join the majority opinion.