[PUBLISH]

In the

# United States Court of Appeals

### For the Eleventh Circuit

_____

No. 23-14124

_____

MARIA FATIMA MEJIA PONCE,
WALTER ESTEBAN CRUZ MEJIA,

                                                    Petitioners,

*versus*

U.S. ATTORNEY GENERAL,

                                                    Respondent.

_____

Petition for Review of a Decision of the
Board of Immigration Appeals
Agency No. A215-768-388

_____

Before JORDAN, LAGOA, and TJOFLAT, Circuit Judges.

JORDAN, Circuit Judge:

Maria Fatima Mejia Ponce petitions for review of a decision of the Board of Immigration Appeals ("BIA") denying her application for asylum, withholding of removal, and relief under the Convention Against Torture, 8 C.F.R. § 208.18. Following oral argument and a review of the record, we deny the petition.[1]

**I**

To be eligible for asylum, a noncitizen must establish that he or she is a "refugee." 8 U.S.C. § 1158(b)(1)(A). As relevant here, the term "refugee" means a person who faces persecution "on account of . . . membership in a particular social group[.]" 8 U.S.C. § 1101(a)(42)(A).

The BIA has long interpreted the term "particular social group" to mean "persecution that is directed toward an individual who is a member of a group of persons all of whom share a common, immutable characteristic," i.e., "one that the members of the group either cannot change, or should not be required to change because it is fundamental to their individual identities or consciences." *Matter of Acosta*, 19 I. & N. Dec. 211, 233 (BIA 1985). The "shared characteristic might be an innate one such as sex, color, or kinship ties, or in some circumstances it might be a shared past

---

[1] We write only on the asylum claim and summarily deny the petition as to the other issues raised.

experience such as former military leadership or land ownership."[2] *Id.*

The BIA has also "elaborated that a particular social group must also be 'defined with particularity' and [be] 'socially distinct within the society in question.'" *Gonzalez v. U.S. Att'y Gen.*, 820 F.3d 399, 404 (11th Cir. 2016) (quoting *Matter of M-E-V-G*, 26 I. & N. Dec. 227, 237 (BIA 2014)). For example, "members of an immediate family may constitute a particular social group." *Matter of L-E-A*, 27 I. & N. Dec. 40, 42 (BIA 2017) (*L-E-A I*), *overruled by Matter of L-E-A*, 27 I. & N. Dec. 581, 596–97 (A.G. 2019) (*L-E-A II*), *reinstated by Matter of L-E-A*, 28 I. & N. Dec. 304, 304–05 (A.G. 2021) (*L-E-A III*).

Applying the teaching of *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 469 U.S. 837 (1984), in several cases we found the BIA's reading of "particular social group" reasonable and

---

[2] The BIA's definition of "particular social group" in *Matter of Acosta* "quickly gained international acceptance, with other countries such as Canada, the United Kingdom, and New Zealand following the standard set in the United States." Seiko Shastri, *Moving Beyond Reflexive* Chevron *Deference: A Way Forward for Asylum Seekers Basing Claims on Membership in a Particular Social Group*, 105 Minn. L. Rev. 1541, 1551–52 (2021) (citing sources). But the United Nations has set out a broader definition of "particular social group": "A 'particular social group' normally comprises persons of similar background, habits or social status." U.N. High Commissioner for Refugees, *Handbook on Procedures and Criteria for Determining Refugee Status and Guidelines on International Protection under the 1951 Convention and the 1967 Protocol relating to the Status of Refugees* 24 ¶ 77 (Feb. 1, 2019), https://www.unhcr.org/media/handbook-procedures-and-criteria-determining-refugee-status-under-1951-convention-and-1967.

4                    Opinion of the Court                    23-14124

deferred to it.  *See Castillo-Arias v. U.S. Att'y Gen.*, 446 F.3d 1190, 1193–99 (11th Cir. 2006); *Gonzalez*, 820 F.3d at 404.  But now that *Chevron*-type deference is no more, *see Loper Bright Enterprises v. Raimondo*, 603 U.S. 369, 411–12 (2024), Ms. Ponce asks us to take a fresh and unencumbered look at the meaning of "particular social group."  She proposes that the term be read to mean "two or more describable, distinctive, or distinguishable humans sharing common characteristics that can be referred to in the aggregate."  Petitioner's Supp. Br. at 9.[3]

## II

A prior panel of this court has already undertaken the plenary statutory review sought by Ms. Ponce and interpreted—to some degree—the meaning of the term "particular social group."  In *Perez-Zenteno v. U.S. Attorney General*, 913 F.3d 1301 (11th Cir. 2019), a case decided before *Loper Bright*, the panel held that the petitioner's asylum claim failed if deference was given to a single-member BIA decision rejecting the petitioner's "particular social group."  *See id.* at 1308–10.  But then the panel went on to hold that

---

[3] In *Loper Bright*, the Supreme Court expressly stated that it was not calling into doubt prior decisions that were based on *Chevron* deference.  *See* 603 U.S. at 412 ("[W]e do not call into question prior cases that relied on the *Chevron* framework. The holdings of those cases that specific agency actions are lawful . . . are still subject to statutory *stare decisis* despite our change in interpretive methodology.").  Given our resolution of Ms. Ponce's asylum claim, we need not address the *stare decisis* effect of our prior decisions deferring to the BIA's interpretation of "particular social group."

the result would be the same even if no deference was given. *See id.* at 1310 ("Even if we were to conclude, however, that the IJ['s] and BIA's determinations are not entitled to deference . . . we would still reach the same conclusion ourselves, and even in the absence of the *Acosta* framework[.]").

Applying *de novo* review, the *Perez-Zenteno* panel explained that, "[b]ased on the plain language of the statute, its logic, and common sense, we agree with the BIA that a 'particular social group' must be more narrowly defined [than a 'catch all' for all persons alleging persecution who do not fit elsewhere]. Like the BIA, we turn to such obvious, discrete and measurable factors as immutability, identity, visibility, homogeneity, and cohesiveness in order to give meaning to the term." *Id.* at 1310–11. Based on this understanding, the panel in *Perez-Zenteno* ruled that the petitioner's proposed "particular social group"—"Mexican citizens targeted by criminal groups because they have been in the United States and they have families in the United States"—was "drawn far too broadly to qualify[.] . . . The demographic group proposed is sweeping in its breadth and not easily cabined by any obvious guidepost or limiting principle." *Id.* at 1304, 1311.

This aspect of *Perez-Zenteno* constituted an alternative holding. But alternative holdings bind just like singular ones. *See United States v. Files*, 63 F.4th 920, 926 (11th Cir. 2023). *See also Massachusetts v. United States*, 333 U.S. 611, 623 (1948) ("[W]e decided both issues, and the judgment rested as much upon the one

determination as the other. In such a case the adjudication is effective for both.").

*Perez-Zenteno* did not provide an all-encompassing judicial definition of "particular social group," but it did hold that the term must be interpreted in light of such "discrete and measurable factors as immutability, identity, visibility, homogeneity, and cohesiveness." 913 F.3d at 1310–11. So any post-*Loper Bright* reading of "particular social group" in this circuit must account for, consider, and apply those factors.[4]

Like the panel in *Perez-Zenteno*, we need not provide a comprehensive or all-encompassing definition of "particular social group." That is because Ms. Ponce's proposed definition—"two or more describable, distinctive, or distinguishable humans sharing common characteristics that can be referred to in the aggregate"— fails to take into account factors like immutability, identity, visibility, homogeneity, and cohesiveness.

---

[4] We recognize that *Perez-Zenteno* has been criticized by some for being internally inconsistent and for not considering the technical/legal meaning of the words "particular," "social," and "group" when they are used together. *See* Jaclyn Kelley-Widmer & Hilary Rich, *A Step Too Far:* Matter of A-B-*, "Particular Social Group," and* Chevron, 29 Cornell J.L. & Pub. Pol'y 345, 371–72, 381 (2019). *See also* Emily Kvalheim, *Considering the Refugee Act's "Particular Social Group" Under* Chevron *Step One: Why Reviewing Courts Should Employ* Cardoza-Fonseca*'s "Traditional Tools of Statutory Construction" in Asylum Cases*, 27 Geo. Mason L. Rev. 969, 1025 (2020) (arguing that the unambiguous meaning of "particular social group" is "any specified collection of people within human society"). But whatever its possible shortcomings, *Perez-Zenteno* constitutes binding precedent for us as a subsequent panel.

In addition, Ms. Ponce's proposed "particular social group"—Honduran business owners who are "perceived as having wealth" and are "target[s] of threats and extortion by . . . criminal gangs," Petitioner's Initial Br. at 13—is too broad. First, there is no monetary threshold or other financial criteria for determining which business owners are members of the group. Second, there is no information on how many business owners in Honduras might potentially belong to (or comprise) the group. Third, there is no standard by which the perception of others as to wealth (or membership in that group) is to be measured. *Cf. Ucelo-Gomez v. Mukasey*, 509 F.3d 70, 73 (2d. Cir. 2007) ("If 'wealth' defined the boundaries of a particular social group, a determination about whether any petitioner fit into the group (or might be perceived as a member of the group) would necessitate a sociological analysis as to how persons with various assets would have been viewed by others in their country.") (applying *Chevron* deference to BIA's rejection of "affluent Guatemalans" as a "particular social group").

Much like the petitioner in *Perez-Zenteno*, Ms. Ponce "has done nothing to limit or circumscribe this large and diverse group in any way." 913 F.3d at 1311. Her proposed "particular social group" is not cognizable for purposes of asylum.

### III

Ms. Ponce's petition is denied.

**PETITION DENIED.**