**NOT FOR PUBLICATION**

In the

United States Court of Appeals

For the Eleventh Circuit

————————————————————

No. 23-13923

Non-Argument Calendar

————————————————————

YESSENIA ELIZABETH PADILLA-BANEGAS,
AYSHA ELIZABETH ANDINO-PADILLA,

*Petitioners,*

*versus*

U.S. ATTORNEY GENERAL,

*Respondent.*

————————————————————

Petition for Review of a Decision of the
Board of Immigration Appeals
Agency No. A220-385-065

————————————————————

Before LUCK, BRASHER, and ABUDU, Circuit Judges.

PER CURIAM:

Yessenia Padilla-Banegas seeks review of a Board of Immigration Appeals's decision affirming the denial of her petition for

asylum, protection under the United Nations Convention Against Torture, and withholding of removal. She contends that the board violated her right to due process and erroneously determined that she was not a refugee eligible for asylum. After careful consideration, we deny Padilla-Banegas's petition.

## FACTUAL BACKGROUND

Padilla-Banegas and her minor daughter are citizens of Honduras.[1] Roughly twenty years ago, Padilla-Banegas married her husband, Delvin Andino, in Honduras. Andino was a well-known professional soccer player. He also ran a Christian sports program with the goal of keeping youth out of the country's street gangs. Because of his work with the sports program, Andino received threats from a Honduran gang known as the "Maras." In 2010, Andino began driving a taxicab to earn additional income for his family. The Maras demanded that he pay them a percentage of his earnings or else they would kill him. Andino initially resisted but ultimately paid the tax for about a year until he gave up driving.

In 2013, Padilla-Banegas came home and found that her family's apartment had been ransacked. That same year, another Honduran gang, the "Barrio-18," threatened to kidnap her young son. The family tried to report the threat to the Honduran police, but they were told that filing a report would only make things worse.

---

[1] Padilla-Banegas's daughter is a derivative beneficiary of her petition.

Eventually, the family moved to a different neighborhood in their city.

In 2017, Padilla-Banegas started studying to become a psychologist. Around the same time, both she and Andino began receiving threatening text messages which they believed came from the Maras. Worried, Andino installed security cameras around his family's home. But the Maras came and destroyed the cameras. The Maras also warned Padilla-Banegas and Andino that if they filed a complaint, they would face violent consequences. The Maras offered the couple an alternative: Andino could work for the gang as a driver, and Padilla-Banegas as a psychologist. The couple ignored the offer.

In 2021, Honduras held elections, and Andino publicly attacked the incumbent party on social media. When the incumbent party won re-election, two things happened. First, Andino took the couple's son and left for the United States. And second, Padilla-Banegas's boss fired her because of Andino's social media posts. After Padilla-Banegas lost her job, the Maras visited her home and asked her to write psychological evaluations declaring two of their incarcerated members mentally unstable. They hoped that these evaluations would lead to reduced prison sentences for the members. Padilla-Banegas refused because she had heard of two professionals who were killed after assisting the Maras. The Maras threatened her, and Padilla-Banegas decided to leave Honduras for the United States two months later. Padilla-Banegas and her daughter

illegally crossed the southern border of the United States in late 2021.

## PROCEDURAL HISTORY

*Proceedings Before the Immigration Judge*

The Department of Homeland Security commenced removal proceedings against Padilla-Banegas for unlawfully entering the United States in violation of 8 U.S.C. section 1182(a)(6)(A)(i). In response, Padilla-Banegas conceded her removability, but filed a petition for asylum, protection under the United Nations Convention Against Torture, and withholding of removal. She asserted that she qualified as a refugee—and thus asylum—because she had been persecuted on account of her religious beliefs, her political opinion, and her membership in three particular social groups. She defined these particular social groups as the: (1) "Immediate family members of Delvin Andino"; (2) "Family members of those who challenge the authority of the Barrio-18 gang in Honduras"; and (3) "Honduran professionals subject to recruitment for forced labor as collaborators by the organized criminal gangs in Honduras."

The immigration judge held a hearing on Padilla-Banegas's petition. He accepted the factual allegations contained in her written application as true and complete. But even crediting Padilla-Banegas's testimony, the immigration judge found that she had not established eligibility for asylum, protection under the Convention Against Torture, or withholding of removal.

The immigration judge determined that Padilla-Banegas was ineligible for asylum because she had not established that she

was a refugee. The immigration judge found that the problems Padilla-Banegas had experienced in Honduras—which were separated by a span of years—did not amount to religious or political persecution, and that it was not clear she would be persecuted if she returned home. Additionally, the immigration judge concluded that none of Padilla-Banegas's proposed particular social groups were cognizable. Because the requirements for withholding of removal are stricter than those of asylum, the immigration judge also rejected Padilla-Banegas's petition for withholding of removal. And the immigration judge found that the Convention Against Torture was inapplicable because the harm Padilla-Banegas suffered in Honduras did not amount to torture. Accordingly, the immigration judge denied Padilla-Banegas's petition and ordered that she and her daughter be removed from the United States.

*Board of Immigration Appeals*

Padilla-Banegas filed an administrative appeal with the Board of Immigration Appeals. She contended that the "immigration judge erred in denying [her] application for relief of asylum and withholding of removal" because she was a persecuted member of a particular social group identified as "Honduran professionals subject to recruitment as collaborators to provide services to help corrupt state institutions for the benefit of the organized criminal groups." In her briefing, Padilla-Banegas attempted to make this group "more definite" by defining it in three new ways: (1) "Honduran college-educated professionals"; (2) "Honduran

professionals with access to the criminal justice system"; and (3) "Honduran professionals with access to the criminal justice system, whom the criminal organizations want to coerce into forced labor." Finally, Padilla-Banegas argued that the immigration judge violated her due process rights because it found that her testimony was credible, but did not grant her petition—despite the absence of contrary evidence.

The Board of Immigration Appeals agreed with the immigration judge and dismissed Padilla-Banegas's appeal. The board determined that Padilla-Banegas had forfeited several issues by failing to meaningfully raise them on appeal. First, it found that she had not challenged the immigration judge's conclusion that she was ineligible for relief under the Convention Against Torture. Second, it ruled that she failed to contest the immigration judge's determination that she had not suffered political or religious persecution. And third, the board explained that she failed to challenge the immigration judge's conclusion that "[i]mmediate family members of Delvin Andino" and "[f]amily members of those who challenge the authority of the Barrio-18 gang in Honduras" were not cognizable particular social groups. The board also refused to consider Padilla-Banegas's reformulations of her "Honduran professionals" particular social group because she did not articulate them before the immigration judge.

Turning to the claims Padilla-Banegas did not forfeit, the board found that the immigration judge properly rejected Padilla-Banegas's asylum petition because her proposed particular social

group—"Honduran professionals subject to recruitment for forced labor as collaborators by the organized criminal gangs in Honduras"—was impermissibly circular. In other words, the particular social group did not exist independently of the alleged persecutory harm. Because her asylum petition failed, the board agreed that Padilla-Banegas could not meet the standard for withholding of removal. Finally, the board rejected Padilla-Banegas's due process claim. It explained that accepting Padilla-Banega's written statement as credible did not mean that it was sufficient to carry her burden of proof.

Padilla-Banegas timely filed this petition for review.

## STANDARDS OF REVIEW

"We review the [Board of Immigration Appeals's] decision as the final judgment, unless [the board] expressly adopted the [immigration judge's] decision." *Gonzalez v. U.S. Att'y Gen.*, 820 F.3d 399, 403 (11th Cir. 2016*), abrogated in part on other grounds by Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 412–13 (2024). When the board agrees with the immigration judge's reasoning, we will review the immigration judge's decision to the extent of the agreement. *Id.*; *Kazemzadeh v. U.S. Att'y Gen.*, 577 F.3d 1341, 1350 (11th Cir. 2009). Here, because the board "agreed with the findings of the" immigration judge "and added its own observations, we review both." *Perez-Zenteno v. U.S. Att'y Gen.*, 913 F.3d 1301, 1306 (11th Cir. 2019).

We review legal conclusions de novo, including "whether a group proffered by an asylum applicant constitutes a particular

social group under the" Immigration and Nationality Act. *Id.* at 1306; 8 U.S.C. §§ 1158(b)(1)(A); 101(a)(42)(A). We review findings of fact under the highly deferential substantial evidence standard. *Gonzalez*, 820 F.3d at 403. When reviewing for substantial evidence, we must "affirm the decision of the [i]mmigration [j]udge if it is supported by reasonable, substantial, and probative evidence on the record considered as a whole." *Silva v. U.S. Att'y Gen.*, 448 F.3d 1229, 1236 (11th Cir. 2006). "[I]f the evidence could support multiple conclusions, we must affirm the agency's decision unless there is no reasonable basis for that decision." *Perez-Zenteno*, 913 F.3d at 1306 (citation omitted). We "may not reweigh the evidence from scratch," and we may reverse "only when the record compels a reversal." *Silva*, 448 F.3d at 1236 (citation and internal quotation marks omitted). "[W]e view the record evidence in the light most favorable to the agency's decision and draw all reasonable inferences in favor of that decision." *Id.* (citation omitted).

## DISCUSSION

In her petition, Padilla-Banegas argues that the immigration judge and the board erred by concluding that she was ineligible for asylum because her "Honduran professionals" particular social group was not cognizable. She also argues that they violated her right to due process by failing to sufficiently credit her stipulated factual assertions. We address each of her arguments in turn.[2]

---

[2] Padilla-Banegas does not challenge the board's determinations concerning her political and religious persecution claims, her petition under the Convention Against Torture, or her other two proposed particular social groups.

*Particular Social Group*

To receive asylum, an applicant must show that she qualifies as a "refugee" under the Immigration and Nationality Act.  8 U.S.C §§ 1158(b)(1), 1101(a)(42); *Diallo v. U.S. Atty. Gen.*, 596 F.3d 1329, 1332 (11th Cir. 2010) ("[T]he asylum applicant bears the burden of proving refugee status.").  To prove refugee status, "the applicant must establish that race, religion, nationality, membership in a particular social group, or political opinion was or will be at least one central reason for persecuting the applicant."    8 U.S.C. § 1158(b)(1)(B)(i).  Padilla-Banegas argues that she is a persecuted member of a particular social group, specifically:  "Honduran professionals subject to recruitment for forced labor as collaborators by the organized criminal gangs in Honduras."  She contends that the immigration judge and the Board of Immigration Appeals erred by finding that this social group was incognizable.  We disagree.

A particular social group must be "narrowly defined"; it cannot be "a 'catch all' for all persons alleging persecution who do not fit elsewhere."  *Ponce v. U.S. Att'y Gen.*, 141 F.4th 1214, 1216 (11th Cir. 2025) (quoting *Perez-Zenteno*, 913 F.3d at 1311).  When evaluating whether a proposed group qualifies under the statute, we consider "such obvious, discrete and measurable factors as

Accordingly, she has forfeited those issues, and we will not address them further.  *See Anthony v. Georgia*, 69 F.4th 796, 807 (11th Cir. 2023) ("Issues not raised in an initial brief are deemed forfeited and will not be addressed absent extraordinary circumstances.").

immutability, identity, visibility, homogeneity, and cohesiveness in order to give meaning to the term." *Id.* at 1216–17 (citation omitted).

Applying these factors, Padilla-Banegas's proposed "Honduran professionals" particular social group is too broad to qualify. First, the identity of the group is uncertain. The group's members are not "obvious, discrete," or "measurable." *Ponce*, 141 F.4th at 1216. The term "professionals" is vague and could cover a wide swath of the Honduran population, ranging from lawyers to electricians. Because of this, it is unclear how the group could be considered "homogene[ous]" or "cohesive[]." *Id.* at 1216–17 (citation omitted). Padilla-Banegas argues—without citation—that professionals only make up a "minority of the Honduran population," but even if true, the number of professionals would not render the proposed social group "narrowly defined." *Id.* (citation omitted). Padilla-Banegas "has done nothing to limit or circumscribe [the] large and diverse group" she proposes "in any [meaningful] way." *Id.* at 1217 (citation omitted). Her proposed particular social group more closely resembles those which we have rejected for overbreadth. *See id.* (rejecting proposed particular social group of "Honduran business owners who are perceived as having wealth and are targets of threats and extortion by criminal gangs" because it was "too broad" (cleaned up)); *Perez-Zenteno*, 913 F.3d at 1304, 1311 (holding that "Mexican citizens targeted by criminal groups because they have been in the United States and they have families in the United States" was "drawn far too broadly to qualify" as a particular social group because it was "not easily cabined by any

obvious guidepost or limiting principle"). Because "Honduran professionals subject to recruitment for forced labor as collaborators by the organized criminal gangs in Honduras" is not a group "easily cabined by any obvious guidepost or limiting principle," it is not a cognizable particular social group for the purpose of establishing refugee status. *Perez-Zenteno*, 913 F.3d at 1311.

Additionally, even if it were not overbroad, Padilla-Banegas's proposed "Honduran professionals" particular social group would be incognizable because it is circularly defined. The defining characteristic of the group "Honduran professionals subject to recruitment for forced labor as collaborators by the organized criminal gangs in Honduras" is its persecution by criminal gangs. But the "risk of persecution alone does not create a particular social group within the meaning of the [Immigration and Nationality Act]." *Castillo-Arias v. U.S. Att'y Gen.*, 446 F.3d 1190, 1198 (11th Cir. 2006); *Rodriguez v. U.S. Att'y Gen.*, 735 F.3d 1302, 1310 (11th Cir. 2013) (holding that a proposed particular social group was incognizable when "the defining attribute . . . [wa]s its persecution by the drug-trafficking organization." (quotation omitted)).

Finally, the board did not err by rejecting Padilla-Banegas's attempt to reformulate her proposed particular social group on appeal. As an appellate body, the board "is not required to consider a [particular social group] on appeal that was never presented to the immigration judge." *Cantarero-Lagos v. Barr*, 924 F.3d 145, 148 (5th Cir. 2019). Padilla-Banegas proffered her proposed particular social group to the immigration judge as "Honduran professionals

subject to recruitment for forced labor as collaborators by the organized criminal gangs in Honduras." But she reformulated that group into three new groups in her appeal to the board: (1) "Honduran college-educated professionals"; (2) "Honduran professionals with access to the criminal justice system"; and (3) "Honduran professionals with access to the criminal justice system, whom the criminal organizations want to coerce into forced labor." These reformulated groups are materially different from her original group, and the immigration judge never had the opportunity to consider their distinctions. "Although the cognizability of a [particular social group] presents a legal question, its answer indisputably turns on findings of fact," and "because factual findings are the province of the [immigration judge], the [board] did not err by refusing to find facts [regarding the reformulated groups] in the first instance." *Id.* at 150 (rejecting petitioners' argument that the board "reversibly erred by refusing to consider their reformulated [particular social group] on appeal"); *see also* 8 C.F.R. § 208.1 ("A failure to define, or provide a basis for defining, a formulation of a particular social group before an immigration judge shall waive any such claim for all purposes under the Act, including on appeal."); *Matter of W-Y-C- & H-O-B-*, 27 I. & N. Dec. 189 (BIA 2018) (requiring an "applicant seeking asylum . . . based on membership in a particular social group" to "clearly indicate on the record before the [i]mmigration [j]udge the *exact delineation* of any proposed particular social group" (emphasis added)).

*Due Process*

Padilla-Banegas asserts that the board violated her right to due process by "discounting" the evidence she offered in support of her petition. She contends that the parties agreed to accept her written statement in lieu of her oral testimony, and that the immigration judge found her written narrative to be "true, correct, and complete." She argues that—because the government did not offer any contrary evidence—her evidence was sufficient to carry her burden to prove refugee status. Again, we disagree.

The Supreme Court rejected a similar argument in *Garland v. Ming Dai*, 593 U.S. 357, 371 (2021). There, the petitioners asserted that their testimony before the immigration judge was due a presumption of credibility and that they were "entitled to relief . . . because no reasonable adjudicator obliged to presume their credibility could have found against them." *Id.* at 368. The Supreme Court held that "even if" the Board of Immigration Appeals "treats an alien's evidence as credible, the agency need not find his evidence persuasive or sufficient to" establish refugee status. *Id.* at 371.

Here, the immigration judge accepted Padilla-Banegas's testimony as credible, but did not find it sufficient to show that she was a refugee. The immigration judge explained that "[n]otwithstanding the fact that [he] found [Padilla-Banegas] to be credible in all respects, after considering the totality of the circumstances, [she] failed to meet [her] burden of proof and persuasion to establish eligibility for asylum." Before announcing his judgment, the

immigration judge stated that he had considered "all evidence in the record" in reaching this determination, "regardless of whether [he] specifically mentioned" each piece of evidence in his decision.[3] And indeed, the immigration judge's order reflects reasoned analysis of Padilla-Banegas's testimony regarding the problems she faced in Honduras.  The board agreed with the immigration judge and, citing *Ming Dai*, concluded that accepting Padilla-Banegas's statement as credible did not require a finding that she had met her burden to establish refugee status.  We agree with the board.  It was not a violation of due process for the immigration judge to conclude that Padilla-Banegas's evidence—while credible—was insufficient to qualify for asylum.

## CONCLUSION

For these reasons, Padilla-Banegas's petition for review is denied.

**PETITION DENIED.**

---

[3] Padilla-Banegas argues that the immigration judge "omitted mention of the most serious incident" from his order:  the fact that the Maras threatened her after she refused to write psychological evaluations for them.  She contends that it was this threat that led her to leave Honduras two months later.  But the immigration judge's analysis reflects that he considered this fact.  The immigration judge agreed that "the one central reason that [Padilla-Banegas] was targeted with any harm . . . was due to the fact that the [Maras] or the Barrio-18 gang . . . seemed to be attempting to forcibly recruit people throughout the country into their ranks."  But the immigration judge explained that this harm was not "covered under our immigration laws" because it did not have "a nexus or connection to one of the five statutorily protected grounds."