**NOT FOR PUBLICATION**

In the

United States Court of Appeals

For the Eleventh Circuit

_____

No. 24-14117

Non-Argument Calendar

_____

ESPERANZA FRANCISCA BALTAZAR-MIRANDA DE
VELASQUEZ,
EMERSON ALDAIR VELASQUEZ-BALTAZAR,

                                                              *Petitioners,*

*versus*

U.S. ATTORNEY GENERAL,

                                                              *Respondent.*

_____

Petition for Review of a Decision of the
Board of Immigration Appeals
Agency No. A209-893-856

_____

Before LUCK, KIDD, and MARCUS, Circuit Judges.

PER CURIAM:

Esperanza Francisca Baltazar-Miranda de Velasquez and her minor son seek review of the Board of Immigration Appeals' ("BIA") final order affirming the Immigration Judge's ("IJ") denial of her claims for asylum and withholding of removal.[1]  Her petition argues that: (1) the BIA erred in concluding that she was not eligible for asylum and withholding of removal because, she claims, her proposed particular social groups were cognizable under the Immigration and Nationality Act ("INA"); and (2) the notices to appear ("NTAs") issued to her and her son were defective in that they omitted a hearing date and time.  The government says, however, that she did not challenge the NTAs before the BIA, so that claim should be dismissed for lack of administrative exhaustion.  After careful review, we deny the petition in part and dismiss it in part.

We review only the decision of the BIA, except to the extent that the BIA expressly adopts the IJ's decision.  *Kazemzadeh v. U.S. Att'y Gen.*, 577 F.3d 1341, 1350 (11th Cir. 2009).  Where the BIA agrees with the IJ's reasoning, we will also review the IJ's decision to that extent.  *Id.*  In petitions for review of BIA decisions, we review factual determinations under the substantial evidence test and conclusions of law *de novo*.  *Id.*  Whether a proposed group qualifies as a particular social group under the INA is a question of law.  *Perez-Zenteno v. U.S. Attorney General*, 913 F.3d 1301 (11th Cir. 2019).

First, we are unpersuaded by the petitioner's claim that the BIA erred in concluding that she was not eligible for asylum or

---

[1] The petitioner's son, Emerson Aldair Velasquez-Baltazar, is a derivative beneficiary of her asylum claim and did not file his own application for relief.

withholding of removal.  The Attorney General may grant asylum to a noncitizen who is a refugee under the INA.  8 U.S.C. § 1158(b)(1)(A).  A refugee is a person who is (1) outside the country of her nationality, (2) unwilling to return to that country, and (3) unable to avail herself of its protection (4) because of persecution or a well-founded fear of persecution on account of one of five statutorily protected grounds.  *Id*. § 1101(a)(42)(A).  The five protected grounds are race, religion, nationality, membership in a particular social group, and political opinion.  *Id*.  The noncitizen bears the burden of proving qualification as a refugee.  *Id*. § 1158(b)(1)(B)(i); *Diallo v. U.S. Att'y Gen.*, 596 F.3d 1329, 1332 (11th Cir. 2010).

Under the INA's withholding of removal provision, a noncitizen shall not be removed to a country if her life or freedom would be threatened in that country on account of race, religion, nationality, membership in a particular social group, or political opinion. 8 U.S.C. § 1231(b)(3)(A).  The noncitizen must show that it is more likely than not that she will be persecuted or tortured on account of a protected ground upon being returned to her country.  *Sanchez Jimenez v. U.S. Att'y Gen.*, 492 F.3d 1223, 1238 (11th Cir. 2007).

The INA does not define "particular social group." 8 U.S.C. § 1101(a)(42)(A).  Before the Supreme Court's decision in *Loper Bright Enterprises v. Raimondo*, 603 U.S. 369 (2024), we applied *Chevron*[2] deference to the BIA's interpretation of the term.  *Mejia*

---

[2] *Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837, 843 (1984) (holding that federal courts should defer to reasonable agency constructions of ambiguous statutory terms), *overruled by Loper Bright Enter.*, 603 U.S. at 412–

*Ponce v. U.S. Att'y Gen.*, 141 F.4th 1214, 1215–16 (11th Cir. 2025). In *Mejia Ponce*, we addressed implications of *Loper Bright*'s overruling of *Chevron* for our analysis of whether a particular social group is cognizable. *See id.* We noted that a prior panel decision, *Perez-Zenteno*, had "already undertaken the plenary statutory review sought by [the petitioner] and interpreted -- to some degree -- the meaning of the term 'particular social group.'" *Id.* at 1216.

In *Mejia Ponce*, we acknowledged that *Perez-Zenteno* "did not provide an all-encompassing judicial definition of 'particular social group,'" but it did hold "that the term must be interpreted in light of such 'discrete and measurable factors as immutability, identity, visibility, homogeneity, and cohesiveness.'" *Id.* at 1217 (quoting *Perez-Zenteno*, 913 F.3d at 1311). We then said that any post-*Loper Bright* interpretation of "particular social group" must consider and apply those factors. *Id.* at 1217 & n.4. The *Mejia Ponce* panel then concluded that it, like the panel in *Perez-Zenteno*, did not need to "provide a comprehensive or all-encompassing definition of 'particular social group,'" since the proposed group at issue there -- Honduran business owners targeted by criminal gangs for threats and extortion because they were perceived as having wealth -- did not qualify under the *Perez-Zenteno* factors. *Id.* at 1217. We held that the petitioner's proposed particular social group was not cognizable because there was: (1) "no monetary threshold or other

---

13 (holding that courts must exercise independent judgment in deciding whether an agency has acted within its statutory authority because the judicial branch is the final authority on legal interpretation).

financial criteria for determining which business owners" were included in the group; (2) "no information on how many business owners in Honduras might potentially belong to (or comprise) the group"; and (3) "no standard by which the perception of others as to wealth (or membership in that group)" could be measured. *Id.*

Here, the BIA did not err in concluding that the petitioner was not eligible for asylum or withholding of removal upon finding that her proposed particular social groups were not cognizable under the INA. As for Baltazar-Miranda de Velasquez's first proposed group -- "young Guatemalan men who have been actively recruited by gangs and who have refused to join the gangs" -- it does not qualify as a particular social group because, like the group at issue in *Mejia Ponce*, there are no clear thresholds or criteria for determining membership. *Id.* Notably, the group does not provide a threshold for the age at which somebody qualifies -- or ceases to qualify -- as a young Guatemalan man. *Cf. id.* (holding that there was no threshold or criteria for determining which business owners are members of the proposed group). Additionally, it is unclear what it means to be "actively recruited" by a gang or to "refuse[] to join" one because each proposed criteria can occur in a variety of different contexts. *Cf. id.* Further, the group is defined, and its membership is in turn determined, in large part by the gang's recruitment activities, rather than any attribute intrinsic to the group members. *See id.* Thus, considering "discrete and measurable factors as immutability, identity, visibility, homogeneity, and cohesiveness," the petitioner's first proposed social group is not cognizable. *Id.* (quoting *Perez-Zenteno*, 913 F.3d at 1311).

As for Baltazar-Miranda de Velasquez's second proposed group -- "Guatemalan families targeted by transnational criminal organizations due to having immediate relatives in the United States" -- it also is not cognizable. This group is closely analogous to the one at issue in *Perez-Zenteno*. 913 F.3d at 1307, 1310–11 (holding that "Mexican citizens targeted by criminal groups because they have been in the United States and have families in the United States" is not a particular social group). As in *Perez-Zenteno*, this group potentially encompasses a large and undefined number of people who live in Guatemala. *See id.* at 1311. Moreover, like Baltazar-Miranda de Velasquez's first proposed group, this group is defined by the actions of others -- the transnational criminal organizations -- rather than attributes intrinsic to its own members. *Mejia Ponce*, 141 F.4th at 1217. The group is further defined by the risk of persecution its members face -- being "targeted by" the criminal organizations. *See Perez-Zenteno*, 913 F.3d at 1310 (observing that a particular social group should not be a "catch all" for everyone subject to persecution that is not based on a protected ground). As a result, Baltazar-Miranda de Velasquez's second proposed group is not cognizable considering factors of "immutability, identity, visibility, homogeneity, and cohesiveness." *Mejia Ponce*, 141 F.4th at 1217 (quoting *Perez-Zenteno*, 913 F.3d at 1311). Accordingly, neither of the groups proposed by Baltazar-Miranda de Velasquez is a cognizable particular social group, and the BIA did not err in finding her ineligible for asylum and withholding of removal.

We also reject the petitioner's claim that her NTAs were defective because she did not exhaust that claim before the BIA. An

NTA must be given to persons in removal proceedings that specifies, *inter alia*, the time and place at which the proceedings will be held. 8 U.S.C. § 1229(a)(1)(G)(i). This requirement is a claim processing rule as opposed to a jurisdictional one, and the government's failure to provide an NTA does not deprive the immigration court of jurisdiction. *Perez-Sanchez v. U.S. Att'y Gen.*, 935 F.3d 1148, 1150 (11th Cir. 2019). An NTA must be a single document containing all the information about the noncitizen's removal hearing specified by statute, including the date and time. *Niz-Chavez v. Garland*, 593 U.S. 155, 161 (2021); *Perez-Sanchez*, 935 F.3d at 1153.

We've said that we may only review a final order of removal if the petitioner has exhausted all administrative remedies available to him. *Kemokai v. U.S. Att'y Gen.*, 83 F.4th 886, 891 (11th Cir. 2023). This requirement is not jurisdictional but is instead a claim-processing rule that applies when asserted by a party. *Id.* A petitioner fails to exhaust her administrative remedies concerning a particular claim when she does not raise the claim before the BIA. *Amaya-Artunduaga v. U.S. Att'y Gen.*, 463 F.3d 1247, 1250 (11th Cir. 2006).

Here, Baltazar-Miranda de Velasquez's argument that her NTAs were defective is not properly before us because she did not raise the issue before the BIA, and the government has invoked the exhaustion requirement. *Kemokai*, 83 F.4th at 891. Although she says she timely objected by raising the issue before the IJ, she nevertheless failed to argue the issue in her appeal to the BIA. Therefore, she failed to exhaust her administrative remedies as to this argument. *See Amaya-Artunduaga*, 463 F.3d at 1250.

She claims she did not fail to exhaust her objection to the defective NTA because the relevant case law was unsettled at the time she filed her BIA brief, but this argument is without merit. We've uncovered no precedent to support her claim that there is an unsettled-caselaw exception to the administrative exhaustion requirement. In any event, by the time she filed her brief to the BIA, decisions by the Supreme Court and this Court had established the requirements for an NTA. *See Niz-Chavez*, 593 U.S. at 161; *Perez-Sanchez*, 935 F.3d at 1153. Therefore, Baltazar-Miranda de Velasquez had an ample basis for arguing, as she did before the IJ, that the NTAs were defective. Accordingly, she failed to exhaust her administrative remedies, and we must dismiss her petition as to this issue. *See Amaya-Artunduaga*, 463 F.3d at 1250.

**PETITION DENIED IN PART AND DISMISSED IN PART.**